### HART v. MALONEY.

(Supreme Court, Appellate Division, Second Department. February 11, 1903.)

1. ACTION FOR SERVICES—EVIDENCE OF EMPLOYMENT.

Testimony of plaintiff, in an action to recover for services in purchasing an electric light plant, that he went to defendant and told him he came pursuant to a telegram from a third person; that he told defendant he had obtained papers relative to the plant, and showed them to him; that defendant examined them, and expressed his satisfaction with the showing, and said he wanted plaintiff to represent him in the matter, and, if the plant was purchased, wanted it taken in plaintiff's name, and that he would take care of plaintiff in the matter,—is sufficient to show an employment by defendant, and an agreement to pay the reasonable value of the services.

Hirschberg, J., dissenting.

Appeal from trial term, Queens county.

Action by Alexander R. Hart against Martin Maloney. From a judgment on dismissal of the complaint at the close of the evidence on both sides, plaintiff appeals. Reversed.

Argued before GOODRICH, P. J., and BARTLETT, JENKS, WOODWARD, and HIRSCHBERG, JJ.

Meyer Auerbach (Abram I. Elkus and James N. Rosenberg, on the brief), for appellant.

William J. Fanning, for respondent.

WILLARD BARTLETT, J. This action was brought to recover compensation for services alleged to have been rendered by the plaintiff upon the employment of the defendant in bringing about a sale to the defendant of the property of the Jamaica Electric Light Company. The complaint alleged the employment of the plaintiff by the defendant, an agreement on the part of the defendant to pay the plaintiff for the services which he should render, and the rendition of such services. It further alleged that it was agreed between the parties that, in case purchase by the defendant of said property could be consummated, the plaintiff was to receive from the defendant for his services stock of the actual value of $20,000 in the corporation owning the business and franchises of the Jamaica Electric Light Company, the said stock to have an earning capacity of 5 per centum per annum; that subsequently the defendant, through plaintiff's influence, "purchased the said Jamaica Electric Light Company" for $325,000, but for convenience took title in the name of the

defendant's private secretary; and that defendant, though often requested so to do, failed to turn over to the plaintiff the $20,000 in stock as agreed upon. There was also an allegation that plaintiff's services were reasonably worth $20,000, and that he had received no compensation whatever. The answer was substantially a general denial. At the close of the evidence on both sides the learned trial judge dismissed the complaint on the ground that there was no question to submit to the jury, stating that there was no evidence that the defendant ever employed the plaintiff, but that if he was employed by anybody it was by a Mr. Charles A. Porter, of Philadelphia, through whom most of the transactions were conducted.

A careful examination of the testimony as it appears in the printed record indicates that in this ruling the learned trial judge must inadvertently have overlooked some of the testimony which had been given. In that of Mr. Hart, the plaintiff, the witness gives an account of an interview with Mr. Maloney, the defendant, in which the plaintiff told the defendant that he came to see him in pursuance of a telegram from Mr. Porter, which he produced, and showed him as his introduction. The witness then goes on as follows:

"I told him I had seen Mr. Williamson in relation to the purchase of the plant at Jamaica, that I had obtained from him the information that was necessary to form an opinion as to its value, and handed him a paper containing a list of the franchises of this company; also a list of its contracts, its expenses, and its income, showing that the company was earning— Mr. Maloney examined the paper, and expressed his satisfaction with the showing, and he then made the proposition to me that I should stand for him in the matter; that he did not wish to be known in the transaction; that if the plant was purchased he desired to purchase it in my name for him, and that he would take care of me in the matter. I left the paper with him."

This suffices, we think, to make out a prima facie case of the employment of the plaintiff by the defendant as alleged in the complaint.

So far as a promise to pay for the plaintiff's services is concerned, it is true that the testimony of the plaintiff himself negatives the making of any express agreement on this subject. A promise, however, appears clearly to be implied by this statement from the testimony of the plaintiff:

"He [the defendant] never said to me that he would pay me for my services in buying this property. Not in that language. He did say so in substance. He said he would take care of me."

In another part of his testimony the plaintiff also made this statement:

"Mr. Maloney never at any time told me that he would give me $20,000 additional stock to be issued if this purchase was concluded. He never gave me to understand that in conversation or in writing or in any way; he simply said I would be taken care of."

This would seem to be ample proof to sustain a finding of an agreement to pay the plaintiff the reasonable value of his services, and the complaint is so drawn as to sustain a recovery on that theory. At the close of the case the plaintiff's counsel expressly asked to go to the jury on a quantum meruit. That the defendant admitted an obligation on his part to pay the plaintiff for what he did in his behalf also appears from the testimony of William L. Wood, cashier

of the Bank of Jamaica, who gave evidence in regard to an interview at which the compensation which Mr. Hart was to receive for his services was discussed between Mr. Maloney and others. "The substance of the conversation," said the witness, "was that they were to capitalize the company in some way, and Mr. Hart was to get $20,000 of the stock. Mr. Maloney said this." These extracts from the record suffice, we think, to show that the learned trial judge erred in withdrawing the case from the consideration of the jury. The judgment should therefore be reversed, and a new trial granted.

Judgment reversed, and new trial granted, costs to abide the event. All concur, except HIRSCHBERG, J., who dissents.