## MALONEY v. MARTIN et al.

(Supreme Court, Appellate Division, Fourth Department. March 10, 1903.)

1. WITNESS — HOSTILITY — CROSS-EXAMINATION—IMPEACHMENT—DISCRETION OF TRIAL COURT.

M. and R. concocted a scheme to defraud plaintiff, whereby R. pretended to be the owner of an invention, a part interest in which M. induced plaintiff to purchase, pretending to buy the balance himself. Plaintiff paid $1,000, and M. gave R. his unsigned check for a like amount. In a suit against M. plaintiff called R. as a witness, who testified to many facts inculpating M. He was asked if M. did not receive a part of the $1,000, and answered, "No." Before the trial, R. had made an affidavit disclosing the real nature of the transaction, and upon this answer, plaintiff's counsel began cross-examining R. from the affidavit. *Held*, that to permit this examination was not an abuse of discretion, as the rule that a party cannot impeach his own witness does not exclude inquiry as to previous contradictory statements by the witness for the purpose of refreshing his memory and eliciting the truth.

Williams and Nash, JJ., dissenting.

Appeal from Trial Term, Monroe county.

Action by Frank W. Maloney against Bernard F. Martin, impleaded with another. From a judgment for plaintiff, and from an order denying a new trial, defendant Martin appeals. Affirmed.

Argued before ADAMS, P. J., and SPRING, WILLIAMS, HISCOCK, and NASH, JJ.

Frank J. Hone, for appellant.
Philetus Chamberlain, for respondent.

SPRING, J. The action is to recover damages for a conspiracy, and the proof is ample to establish the concerted purpose of the defendants to defraud the plaintiff, and its accomplishment. The defendant Rein claimed to be the inventor of a gasoline rotary engine designed for use in propelling automobiles. In June, 1900, he entered into a written agreement with the appellant and respondent whereby he agreed to transfer to them an undivided half interest in said device and the patent thereon which he was to procure. The

parties of the second part agreed to pay him therefor $3,000—$2,000 in cash, and $500 when the engine was fully tested, and the balance upon the granting of the patent and the machine proving practicable. It developed, however, that there was a secret agreement between Martin and Rein whereby the former was to receive the one-fourth interest in the device for inducing the plaintiff to invest in the scheme. The plaintiff contributed $1,000, and at the same time he made this payment Martin pretended to draw his own check for a like sum, which he handed over to Rein unsigned, and which was part of the scheme to defraud the plaintiff. It later appeared that the drawings of the device which Rein had displayed to the plaintiff were not his own, and that the proposed invention was a myth.

The plaintiff, upon learning he had been duped, as he alleged, brought this action. Rein, who did not answer, was placed upon the stand in behalf of the plaintiff, and testified to many facts inculpating Martin in the scheme. He was asked by the counsel for the plaintiff if Martin did not receive a part of the $1,000 which the plaintiff paid pursuant to the agreement, and answered in the negative. Several questions of somewhat similar import were put to him to show that Martin stated to the plaintiff at the time of the negotiations that each was to contribute $1,000 in the enterprise in cash, and, further, that by virtue of the secret arrangement between the defendants a part of the money paid by the plaintiff was to be turned over to Martin. All of these questions were answered in the negative. Before the trial, Rein, at the instance of the plaintiff, had made an affidavit purporting to disclose the real nature of the transaction, and of the fraud which had been perpetrated upon the plaintiff. The counsel for the plaintiff, with this affidavit in his hand, and against the objection of the counsel for the appellant, and after proving the affidavit had been verified by Rein, asked him several questions, either read from the affidavit verbatim, or else with that as the text for the inquiries. To these many questions Rein returned in the main equivocal answers, in some instances answering, "Yes," in others that he so swore if the affidavit contained the statement, and in others that he did not know what the affidavit contained, which he often reiterated. The affidavit itself was excluded upon the objection of the appellant's counsel. This method of examination, and the use of the affidavit, raise the serious questions upon this appeal. Rein, in sympathy, and, as a defendant, charged with the fraud in conjunction with the appellant, was a witness adverse to the plaintiff. The latter, however, was justified in producing him as a witness. The affidavit led him to believe that Rein, on the turning matters in the case, would testify in favor of the plaintiff in accordance with the facts set forth in the affidavit. Plaintiff's counsel was surprised, therefore, when the witness departed from statements embodied in the affidavit, and upon the faith and credence of which he was placed upon the stand. The witness who unexpectedly develops hostility to the party who produces him may be subjected to a cross-examination if the trial court is satisfied the witness is adverse, or the counsel has been tricked into putting him on the stand. Becker et al. v. Koch, 104 N. Y. 394–401, 10 N. E. 701,

58 Am. Rep. 515; Ency. Pl. & Pr. vol. 8, page 86.  The extent of this cross-examination is within the discretion of the court, and is dependent upon the circumstances of the case, and no rigid rule can be adopted covering every case.  There is, however, one general rule of evidence, which seems to have been settled out of the prolonged discussions by the courts, even in the examination of adverse witnesses; and that is, a party may not impeach his own witness, either directly or by proving his prior contradictory statements.  Thompson v. Blanchard, 4 N. Y. 303; Coulter v. Am. Merchants' Union Express Co., 56 N. Y. 585; Becker v. Koch, 104 N. Y. 394, 10 N. E. 701, 58 Am. Rep. 515; Fall Brook Co. v. Hewson, 158 N. Y. 150, 52 N. E. 1095, 43 L. R. A. 676, 70 Am. St. Rep. 466.  The party producing a witness is sponsor for his credibility, and may not, for any cause, turn front, and discredit him.  If this evidence was produced for that purpose, it was within this rule, and a new trial should be ordered.

But we are satisfied the inquiries in the nature of a cross-examination were not resorted to for the purpose of disparaging the witness.  Their purpose was to refresh his recollection, with a view to elicit from him certain cogent facts, and perhaps with the design of neutralizing the effect of the persistent denials of the witness, and to explain somewhat the circumstances under which this defendant, adverse in feeling, was placed upon the stand in behalf of the plaintiff.  It would not have been policy for the plaintiff's counsel to discredit the witness.  Rein had testified to facts connecting Martin with the scheme to overreach the plaintiff.  His evidence, if believed, was sufficient already to make a question of fact on the charge of conspiracy.  At that stage of the case the counsel had a right to assume Martin would contradict fully the testimony of Rein, and it was, consequently, important not to impugn his witness' veracity, or bring him into disrepute with the jury.  There were, however, salient facts, which, if true, would rivet Martin to the attempt to deceive the plaintiff, and the counsel believed he had a right to rely upon proving those facts by Rein.  He was surprised when his witness did not respond freely, and state the facts evidently contained in the affidavit.  He thereupon produced the affidavit, at times making its contents the keynote of his questions, at others reading from it literally to the witness.

As I understand the authorities, there is a sharp distinction between endeavoring to show a witness, though hostile, is testifying contrary to his previous declarations, for the purpose of assailing his credibility and pursuing a cross-examination which may incidentally bring reproach upon him, but the object of which is to enliven his recollection, or to explain his testimony in the light of his former sworn statement, or to account for the surprise of the counsel at the adverse attitude of the witness.  Greenleaf on Evidence, vol. 1, sec. 444; Wright v. Beckett, 1 Moo. & Rob. 414; Melhuish v. Collier, 15 Q. B. 878; Bullard v. Pearsall, 53 N. Y. 230; People v. Kelly, 113 N. Y. 647, 21 N. E. 122; Hunter et al. v. Wetsell et al., 84 N. Y. 549–555, 38 Am. Rep. 544; Rice on Evidence, vol. 1, page 610 et seq.

In Bullard v. Pearsall (supra), the plaintiff called a witness to prove a conversation with the defendant had occurred prior to July 17th, which was important. To the surprise of the plaintiff, the witness testified the conversation occurred July 24th. The plaintiff was allowed to ask him if, upon a preceding examination, he had not sworn the conversation took place in June. This ruling was sustained by the Court of Appeals, and it was the only question discussed in the opinion. The court say, at page 231:

"The further question has frequently arisen whether the party calling the witness should, upon being taken by surprise by unexpected testimony, be permitted to interrogate the witness in respect to his own previous declarations, inconsistent with his evidence. Upon this point there is considerable conflict in the authorities. We are of opinion that such questions may be asked of the witness for the purpose of probing his recollection, recalling to his mind the statements he has previously made, and drawing out an explanation of his apparent inconsistency. This course of examination may result in satisfying the witness that he has fallen into error, and that his original statements were correct, and it is calculated to elicit the truth. It is also proper for the purpose of showing the circumstances which induced the party to call him. Though the answers of the witness may involve him in contradictions calculated to impair his credibility, that is not a sufficient reason for excluding the inquiry. Proof by other witnesses that his statements are incorrect would have the same effect, yet the admissibility of such proof cannot be questioned. It is only evidence offered for the mere purpose of impeaching the credibility of the witness which is inadmissible when offered by the party calling him. Inquiries calculated to elicit the facts, or to show to the witness that he is mistaken, and to induce him to correct his evidence, should not be excluded simply because they may result unfavorably to his credibility. In case he should deny having made previous statements inconsistent with his testimony, we do not think it would be proper to allow such statements to be proved by other witnesses; but where the questions as to such statements are confined to the witness himself, we think they are admissible."

In Hunter et al. v. Wetsell et al., supra, the subject was again up, and the court, after stating that a party may not impeach his own witness, use this language at page 556:

"It would not have been sound if founded upon the idea that plaintiff could not impeach his own witness. It is true that by calling him he represented him as worthy of belief, and was not at liberty to impeach his general reputation for truth, or impugn his credibility by general evidence tending to show that he was unworthy of belief. That was neither the purpose nor effect of the evidence. Plaintiff was at liberty to contradict him as to the particular fact of there having been no restatement (Thompson v. Blanchard, 4 N. Y. 311), and this not only when it appeared that the witness was innocently mistaken, but even when the evidence might collaterally have the effect of showing that he was generally unworthy of belief."

This distinction is also recognized in Coulter v. American Merchants' Union Express Company, 56 N. Y. 585, and which is a leading authority enunciating the principle that a party may not impugn the trustworthiness of a witness whom he has placed upon the stand. The court says, at the close of its opinion, at page 590:

"There is a class of cases in which a party who calls a witness has been allowed to show by his own examination, at least, if not by introducing proof by others, that he had previously stated the facts in a different manner; but this seems to stand upon the ground of surprise, as contrary to what the party had a right or had been led to believe he would testify, or of deceit through the influence of the other party."

Some of these cases were animadverted upon in the recent case in the United States Supreme Court, Putnam v. U. S., 162 U. S. 687, 16 Sup. Ct. 923, 40 L. Ed. 1118. In that case a witness' recollection was endeavored to be refreshed by reference to his testimony before the grand jury, and a majority of the court held the evidence was incompetent, for the reason that the time when it was given was not contemporaneous with the transaction to which it related. An elaborate discussion of the authorities followed, resulting in a disapproval of the doctrine of the cases to which I have referred, but the underlying principle which is the text for the opinion is not analogous to the one involved in the case under discussion. The matter, even to the extent of allowing a party to contradict his own witness was regulated by statute in Great Britain in 1854. 17 & 18 Vict. c. 125, § 22.

On principle an examination of this kind is within the rule permitting the cross-examination of an adverse witness by the party calling him. The manner in which it shall be conducted rests with the trial court, and the discretion exercised will not be interfered with unless it has been abused. The chief purpose of the probing character which the examination may take is to ascertain and lay the proof before the jury. The object is not to allow the party to asperse his own witness, although that may result in some degree. While it is often difficult in an actual trial to note the distinction adverted to, yet in theory and in principle it is well defined. In the present case we think it may well be said the plaintiff's counsel kept within the compass of the authorities to which we have referred, and whatever there may have been in the examination of Rein which tended to disparage his credibility was auxiliary to the chief purpose for which the method adopted was permitted. The judgment and order should be affirmed, with costs.

Judgment and order affirmed, with costs.

ADAMS, P. J., and HISCOCK, J., concur. WILLIAMS and NASH, JJ., dissent.