(101 App. Div. 37)

### HART v. MALONEY.

(Supreme Court, Appellate Division, Second Department. January 27, 1905.)

1. WORK AND LABOR—IMPLIED PROMISE TO PAY.
    Where plaintiff rendered services to defendant in bringing about a transfer of an electric lighting plant under circumstances reasonably warranting an expectation on plaintiff's part that defendant would pay for such services, a promise to pay is implied.

---

¶ 1. See Work and Labor, vol. 50, Cent. Dig. § 3.

2. SAME—EVIDENCE.

Where, during plaintiff's employment by defendant to further a transfer of an electric lighting plant to the latter, there was no suggestion that defendant was acting for any one other than himself, and he treated the matter as his own personal concern, evidence that defendant and another in the transaction were acting as a committee on behalf of a foreign corporation was inadmissible in an action by plaintiff for the reasonable value of his services.

3. SAME—VALUE OF SERVICES—EXPERTS—QUALIFICATIONS.

In an action for broker's services in furthering a sale of an electric light plant, witnesses who had had long experience in deals involving the value of broker's services in the sale of railroad plants and corporations having public franchises were entitled to testify as to the value of plaintiff's services, though they had not had experience with reference to sales of electric lighting plants.

4. SAME—HYPOTHETICAL QUESTIONS.

In an action for broker's services in the sale of an electric light plant, a witness, after stating that he had heard the plant described in court, and the testimony with reference to its sale for $325,000, was asked, "With the earning capacity as stated, what, in your opinion, is the reasonable value of the services of a man who brings about the purchase and sale of the stock and bonds of such company?" *Held*, that such question was proper, there being no controversy as to the price or earning capacity of the plant.

5. SAME—WITNESSES—REFRESHING MEMORY.

Where a nonhostile witness had testified that he did not have any conversation with M. on a certain evening, etc., and he had previously testified to the contrary, it was not error for the court to permit his attention to be called to his previous testimony for the purpose of refreshing his recollection.

6. SAME—PREJUDICE.

Where, in a suit for broker's services, plaintiff relied on a quantum meruit, and also on an express contract to deliver certain stock, and the issue with reference to the stock was withdrawn from the jury, defendant was not prejudiced by a ruling permitting a witness on such issue to refresh his memory from his testimony given on a former trial for the purpose of correcting his subsequent testimony.

Hirschberg, P. J., dissenting.

Appeal from Trial Term, Queens County.

Action by Alexander R. Hart against Martin Maloney. From a judgment in favor of plaintiff and from an order denying defendant's motion for a new trial on the minutes, he appeals. Affirmed.

Argued before HIRSCHBERG, P. J., and WOODWARD, BARTLETT, JENKS, and HOOKER, JJ.

Henry A. Monfort, for appellant.

Abram I. Elkus (Meyer Auerbach and Carlisle J. Gleason, on the brief), for respondent.

WOODWARD, J.   When this case was before this court upon an appeal from a judgment dismissing the complaint (80 App. Div. 265, 80 N. Y. Supp. 293), we held that the learned court at Trial Term had erred in withdrawing the case from the consideration of the jury, and after a careful examination of the evidence produced upon the second trial we are unable to discover any material difference between the case as it appeared at the first and second trials, although an effort has been made on the part of counsel to point out a distinction.   The jury, con-

sidering all of the evidence, has reached the conclusion that the plaintiff is entitled to recover in this action, and unless there is error in the rulings there is no reason why the judgment should be disturbed.

Briefly, the facts, as the jury was justified in finding them, are that the plaintiff was the president of the Long Island Electric Railway, and one Charles A. Porter was the vice president of the same corporation. These met at a certain hotel, and during a conversation Porter told the plaintiff that he knew of some people who were purchasing electric lighting plants, and asked the plaintiff if he knew of any such for sale. The plaintiff spoke of the Jamaica Electric Light Company, and Porter asked him to get all of the information he could in reference to this plant, saying that he would then tell plaintiff for whom the information was desired. Subsequently, and on the 18th day of July, 1898, plaintiff received a telegram from Porter, who was then in Philadelphia, as follows: "Can you have balance sheet with full particulars pertaining to property at Room 1813, Bank of Commerce Building, tomorrow, Friday, about noon. Answer confidential. See Maloney." Mr. Maloney, the defendant, was with Porter at Philadelphia at the time this dispatch was sent, and it was apparently sent at his request. The next day the plaintiff called at the place designated, and furnished Maloney the desired information. The latter, after looking over the figures presented, and making some inquiries, suggested to the plaintiff that he act in the matter in behalf of the defendant, and that the plaintiff would be taken care of, or words to that effect. Subsequently plaintiff brought Mr. Williamson, president of the Jamaica Electric Light Company, to the office of defendant, introducing him, and negotiations followed between the defendant and Williamson which finally resulted in the sale of the plant to the defendant for $325,000, the transfer being made to one McCall, as trustee, evidently for a Philadelphia corporation. Plaintiff participated in various conferences, and held himself in readiness to perform any services which might be required of him in consummating the transaction; and while he sought to establish a special contract, by which he was to have $20,000 of the stock in a reorganized corporation, this was withdrawn from the consideration of the jury, and the recovery is upon the basis of the value of the services rendered in bringing about the purchase of this property by the defendant. There is a decided conflict in the evidence about the details of the conversation between the plaintiff and defendant at the first meeting, and as to some of the details of the entire transaction, but there is evidence to support the facts as the jury must have found them, and, whether the defendant did in fact use language which would charge him with an obligation to pay the plaintiff for his services or not, the plaintiff acted and rendered services under circumstances which warranted reasonable expectation on his part that the defendant would pay for them, and, this being true, the law may imply a promise of payment. Crane v. Ganung, 89 App. Div. 398, 85 N. Y. Supp. 975, and authority there cited. The plaintiff, a man at the head of an important corporation, and in a position to get desired information, engaged in the work at the suggestion of Porter, who agreed to disclose to him for whom the information was desired. Porter pointed to Maloney as the person who desired such information, and the plaintiff, who had in the

meantime secured the necessary facts, delivered them promptly to the defendant, and upon the basis of negotiation thus established, followed by the personal interview between Williamson and Maloney, the latter succeeded in securing a valuable plant, with its franchises, and there is no good reason suggested why he should not be compensated. Indeed, it is practically conceded that the plaintiff is entitled to compensation, but it is urged that Porter or the corporation which became the ultimate purchaser should be charged, rather than the defendant, although it is admitted upon the trial that the judgment will not, if found, be a burden upon Maloney, but will be paid by the purchasing corporation, in whose behalf it is intimated both Maloney and Porter were acting. Under such circumstances it cannot be the duty of this court to be astute in discovering a means of overturning the plaintiff's judgment.

Under his first point defendant urges that it was error for the learned court at Trial Term to exclude the testimony of the witness Joseph B. McCall, and certain exhibits tending to show that Porter and the defendant were not acting in their own behalf in the transaction, but as a committee of the Pennsylvania Manufacturing Light, Heat & Power Company. But how this evidence could be proper in the trial of this action it is difficult to understand. There was no suggestion that the plaintiff knew that the defendant was acting for any one other than himself. The evidence shows conclusively that the defendant treated the matter as one of his own personal concerns, and never intimated anything different to any one of the parties until after the deal had been informally agreed upon between himself and Williamson. When it came to the actual transfer, it was made to McCall as trustee, but up to that time no one had figured in the transaction except Maloney. He named the figure he would give, and his proposition was accepted by Williamson, and all of the defendant's talks with the plaintiff and those who acted in his behalf were upon the assumption that it was Maloney who was to purchase. If Maloney was the agent or committee of the Pennsylvania corporation, he never disclosed this fact at a time when he was dealing with the plaintiff, and the latter had a right to look to the man who had accepted of his services as the one who was to pay for them, and his rights could not be made to depend upon facts which he had no reasonable means of knowing.

Under point 2 the defendant urges that the witnesses as to the value of the services rendered were not qualified as experts. But this is a question resting largely upon the determination of the trial court, and an examination of the qualifying evidence convinces us that the court did not err in permitting the plaintiff's witnesses to testify as to the value of the services rendered. Men who had had long experience in dealings involving the value of brokers' services in the sale of railroad plants and corporations having public franchises might properly testify as to the value of services in the sale or purchase of an electric lighting corporation, and we are of opinion that the mere fact that their experience had not been with electric lighting plants was not of controlling importance. The decision of the learned court at Trial Term that the experts were qualified to testify was not against the evidence, nor did it lack evidence in its support, and it should not be disturbed here. Slocovich v. Orient Mut. Ins. Co., 108 N. Y. 56, 14 N. E. 802.

The suggestions under point 3 of appellant's brief do not appear to have merit under the facts in this case. The witnesses, after stating that they had heard described in court the electric light plant situated at Jamaica, and had heard the testimony in reference to the sale of the plant for $325,000, were asked: "With the earning capacity as stated, what, in your opinion, is the reasonable value of the services of a man who brings about the purchase and sale of the stock and bonds of such a company?" This was objected to upon the ground that "the witness is shown to have no familiarity with the purchase or sale of the assets of such a company, and on the further ground that the question is incompetent, in that it calls upon the witness to pass upon the force and effect of the testimony given upon this trial." There was no conflict in the evidence as to the purchase price of the plant; no controversy as to its earning capacity; and the question was, to all intents and purposes, a hypothetical one, based upon the purchase price and earning capacity of the plant. This was all of the basis necessary for an intelligent opinion as to the value of the services rendered, and the case of Reynolds v. Robinson, 64 N. Y. 589, is not controlling in the matter now before us. See Matter of Benton, 71 App. Div. 522, 525, 75 N. Y. Supp. 859.

The objection raised to the witness Wood refreshing his memory by reading from his evidence upon a previous trial affords no ground for a reversal, assuming it to have been erroneous. It related entirely to the matter of a special contract for the delivery of $20,000 of stock, and this branch of the case was withdrawn from the consideration of the jury, so that the testimony was, in effect, stricken out of the case. We are of opinion, however, that it was not error to permit the witness to refresh his memory. He had testified: "I did not have any conversation with Maloney with reference to any proposition or offer that he made to Williamson on that day; not that evening, I think, if I remember it now." Counsel, in calling attention to the above, said: "Now, in order to refresh your recollection, I want to call your attention to testimony that you gave on the last trial." After objection and exception, the witness was permitted to read over the minutes, and he then replied: "After reading that, my recollection is refreshed. Just as we were leaving—as I was about leaving—Mr. Maloney said that $325,000 was all right, plus the stock that he talked to Williamson about." This witness was not hostile. The purpose of this reference to the minutes was not to impeach or contradict the witness, but was simply for the purpose of bringing out just what occurred, and the reading of the minutes appears to have had no other effect than to call his attention to a matter of detail which had evidently escaped him at the time, but which he recalled on his previous testimony being shown him. It simply permitted the witness to correct his testimony in a matter which might otherwise have been brought out on cross-examination to discredit him, and, as the claim for compensation in stock was withdrawn from the jury, the defendant could not have been injured by its admission in any event. See Honstine v. O'Donnell, 5 Hun, 472, 474, 475, and authority there cited; Maloney v. Martin, 81 App. Div. 432, 80 N. Y. Supp. 763, affirmed without opinion 178 N. Y. 552, 70 N. E. 1102. An examination of the entire case per-

suades us that the trial proceeded without prejudicial error, and that the verdict of the jury ought not to be disturbed.

The judgment and order appealed from should be affirmed, with costs. All concur, except HIRSCHBERG, P. J., who dissents.