FALL BROOK COAL COMPANY, Appellant, *v.* ROBERT C. HEWSON, Respondent.

1. WITNESS — IMPEACHMENT — NOT WITNESS OF IMPEACHING PARTY. A party who having called and sworn a witness excuses him before he has been asked any material question does not make him his witness so as to be precluded from thereafter impeaching his credibility by contradicting him, in case the witness subsequently gives material testimony in behalf ·of the opposite party.

2. APPEAL — EXCEPTION TO PORTION OF CHARGE. An exception to a ·portion of a charge is applicable only to the portion to which it apparently .related, and if such portion is free from error the exception is not available on appeal to attack an alleged error in another portion, to which the ·exception was not calculated to call the attention of the trial court.

*Fall Brook Coal Co.* v. *Hewson*, 92 Hun, 607, affirmed.

(Argued January 17, 1899; decided February 28, 1899.)

APPEAL from a judgment of the late General Term of the Supreme Court in the fifth judicial department, entered February 14, 1896, affirming a judgment in favor of the defendant entered upon a verdict, and an order denying a motion for a new trial.

This action was brought to recover $1,453.68 and interest, alleged in the complaint to be due for cold storage service rendered by the plaintiff to the defendant.

The defendant alleged as a counterclaim that the services rendered were worthless because of the plaintiff's neglect, and that he had been damaged to the amount of $2,000, for which he demanded an affirmative judgment.

Further facts are stated in the opinion.

*Albert H. Harris* for appellant.  A party cannot show inconsistent statements made by his own witness for the purpose of impeaching him.  (*Coulter* v. *Express Co.*, 56 N. Y. 585; *Hankinson* v. *Vantine*, 152 N. Y. 20; *Nichols* v. *White*, 85 N. Y. 531; Stephen on Ev. [Chase ed.] 329; *Selover* v. *Bryant*, 21 L. R. A. 418; *Sisson* v. *Conger*, 1 T. & C. 564; 1 Greenl. on Ev. §§ 442, 445; *Jackson* v. *Varick*, 7 Cow. 238; 2 Wend. 166; *Fulton Bank* v. *Stafford*, 2 Wend. 483; *Furst* v. *S. A. R. R. Co.*, 72 N. Y. 542; *Sherman* v. *D., L. & W. R. R. Co.*, 106 N. Y. 542.)  The court improperly charged the jury that the plaintiff could not recover if the plant was not properly run.  (*Lennon* v. *Smith*, 124 N. Y. 578.)

*C. W. Kimball* for respondent.  The rule prohibiting a party from impeaching his own witness was not violated by permitting the witness Wilson to be contradicted.  (*Beebe* v. *Tinker*, 2 Root, 160; *Becker* v. *Koch*, 104 N. Y. 394.)

PARKER, Ch. J.  The defendant called as a witness one Wilson, who, after being sworn, testified as follows: "I reside in Penn Yan.  I know the defendant.  I did not work for him in the spring of 1893; I was at the cold storage at that time about ten minutes in the fore part of April."  No other questions were asked him, nor did he give any further testimony, and the testimony quoted had no bearing whatever upon the issues on trial.  It is suggested that he was called under a misapprehension, but be that as it may, we shall assume merely in passing on the question growing out of his being called and sworn, that before any material question was asked, the party calling the witness excused him from the witness stand.  When the plaintiff came to present evidence in rebuttal of the testimony adduced on the part of the defendant, it

called Wilson to the stand, and he gave material testimony in favor of the plaintiff. The defendant, claiming the right to cross-examine him, asked him whether he had not, at specified times and places, made to other persons statements tending to contradict the testimony given by him upon the plaintiff's examination. Wilson denied having made them, and the defendant afterwards called witnesses who testified that Wilson had made the contradictory statements that he specifically denied having made; to this evidence the plaintiff objected upon the ground that it was incompetent, in that the defendant having first sworn and examined Wilson as a witness in his own behalf, could not be allowed to discredit him by giving testimony that he had made statements out of court differing from his statements as a witness in court. The exception to the ruling of the court admitting the evidence notwithstanding the objection, presents one of the questions which, on this review, it is urged, call for a reversal of the judgment. Upon a motion for a new trial, this question was very carefully considered by Mr. Justice RUMSEY, who reached the conclusion that no error had been committed, and the General Term has affirmed the position thus taken.

As the question is a novel one, we shall briefly state the reasons that persuade us that the view taken by the learned court was the correct one.

The rule is well settled in this state that a party cannot show inconsistent statements made by his own witness for the purpose of impeaching him. (*Coulter* v. *Express Co.*, 56 N. Y. 585; *Nichols* v. *White*, 85 N. Y. 531; *Hankinson* v. *Vantine*, 152 N. Y. 20, 27.) This rule, which was originally established by authority, came to us from England, where, as in some of our sister states, it has since been either abrogated or modified by statute. (Stephen on Evidence [Chase ed.], 329, note; *Selover* v. *Bryant*, 21 L. R. A. 418, note; American Law Review, vol. II, 261.) Greenleaf on Evidence (Vol. I, § 442) states the reason for the rule as follows: " When a party offers a witness in proof of his cause, he thereby, in general, represents him as worthy of belief. He is presumed

to know the character of the witnesses he adduces; and having thus presented them to the court, the law will not permit the party afterwards to impeach their general reputation for truth, or to impugn their credibility by general evidence tending to show them to be unworthy of belief. For this would enable him to destroy the witness if he spoke against him, and to make him a good witness if he spoke for him, with the means in his hand of destroying his credit if he spoke against him." (See, also, Wharton on Evidence, § 549.) The rule being established beyond change, save by legislative enactment, that one cannot impeach his own witness, the question presented here is whether Wilson became the defendant's witness within the meaning of the rule. Would he have become such had his name been simply called without administering the oath? If not, would he have become such through the additional act of administering the oath? If the propounding of questions be also necessary, would an inquiry as to his name and residence have made him the party's witness in such a sense that he would be bound to support his character from the beginning to the end of the trial, or would that have happened only upon some question being asked him material to the issues on trial?

It often happens that a witness is intentionally but unadvisedly called, the counsel for the moment laboring under the impression that the witness has knowledge of some fact it is desirable to establish, but before his examination has proceeded far enough to bring about an inquiry touching any material fact to the controversy, counsel is advised by an associate, or by the party, that the wrong witness has been called, and that some other person is possessed of the information he desires to have given to the court. In such a case it would clearly seem to be a hardship that an error thus committed, which quite frequently happens, in the press of trial, should burden a party with the responsibility of having the person called treated as a witness for that purpose throughout the trial.

So far as the diligence of the counsel and our examination have disclosed, this precise question has not been before the

court of last resort in any of the states except Connecticut, where many years ago in the case of *Bebee* v. *Tinker* (2 Root, 160) a witness was called and sworn ; as to the point regarding which the plaintiff had called him to testify, the court ruled that it was not relevant to the issue, and thereupon the defendant took the witness and asked him several questions, the answers made by him being against the plaintiff. Thereupon the plaintiff offered to introduce witnesses to impeach, which was objected to on the ground that he was the plaintiff's witness. The report of the case concludes with : " The court admitted the witnesses to impeach his character, on the ground that although the plaintiff introduced him, yet as the defendant only improved him, in that respect he was to be considered as the defendant's witness."

In England, where the rule originated, the tendency of the courts seems to have been not to apply it unless the party has proceeded so far with the witness as to ask him some question bearing upon the issues on trial. In *Creevy* v. *Carr* (7 Carr. & P. 64) a witness was called for the defendant and asked : " Are you the landlord of the house at which the fire occurred ? " The witness answered : " I am, sir." Thereupon the court asked the defendant's counsel : " What do you propose to prove more ? " and he replied : " My lord, I will close my case here." The counsel for the plaintiff said : " I wish to cross-examine the landlord ; " and the court said : " Oh no, I stopped his evidence." Counsel : " He was asked a question and he answered it, and I have, therefore, a right to cross-examine him." The court : " Not where the witness, as here, has only been asked an immaterial question and his evidence is stopped by the judge."

In *Wood* v. *Mackinson* (2 Mood. & R. 273) a witness was called for the plaintiff and sworn in the usual way, but before he had put any questions to the witness, counsel stated that he had been misinstructed as to what the witness was able to prove, and he should not examine him at all. The witness being about to retire, counsel for the defendant claimed the right to cross-examine him, but the court said : " Here the

learned counsel explains that there has been a mistake, which consisted in this, that the witness is found not to be able to speak at all as to the transaction which was supposed to be within his knowledge. This is, I think, such a mistake as entitles the party calling the witness to withdraw him without his being subject to cross-examination."

In *Bracegirdle* v. *Bailey* (1 Fos. & F. 536) the plaintiff was sworn and tendered as a witness for cross-examination, but was not examined in chief. The defendant's counsel asked several questions touching his conduct and life ; but the court ruled that these questions could not be asked, inasmuch as he has proved nothing "that you could cross-examine him on to discredit him."

In · *Rush* v. *Smith* (1 Cromp., M. & R. 94) it was held that a witness called to produce documents, and sworn by mistake, and a question put to him that he does not answer, does not entitle the opposite party to cross-examine him.     ·

The general view upon which these cases proceeded is that a party does not necessarily make a person his witness by merely calling and swearing him, and we are not able to discover any good reason for disagreeing with them. On the contrary, it seems to us that the rule is not properly applicable, save in cases where a party attempts to elicit from a witness called to the stand, testimony material to the issues upon trial ; that until such an attempt is made, the party has done nothing that can by any possibility affect the trial either to his own benefit or to the harm of his opponent, and, therefore, he has not offered a witness in proof of his cause and is not within the reason of the rule that burdens him with the necessity of supporting the character of the witness to the end of the trial. His mistake, however caused, has not harmed the other party and the interests of justice can in nowise be promoted by permitting that other party to take such advantage of the mistake as will fasten upon his opponent the responsibility of vouching for the character of a witness actually hostile and from whom he has not attempted to secure any proof in the cause.

The learned counsel for the appellant urges that his exception taken to that portion of the charge in which the court stated "that the plaintiff was not entitled to recover if the plant was not properly run," calls for a reversal of the judgment. The defendant admitted the making of the contract upon which the plaintiff sued, but alleged that the contract had not been properly performed by the plaintiff and sought to recover his damages. In the charge to the jury the court did say that the plaintiff could not recover for the services unless it convinced the jury by a fair preponderance of evidence that it did keep the apples in proper cold storage, etc. But as we read the exception it was not intended to have, nor is it likely it had, the effect of calling the attention of the court to the fact that the counsel for the plaintiff claimed that there was error in the charge as to the burden of proof. The language of the exception apparently related solely to another portion of the charge, in which the court said that if the jury should find "that the rotting was the result of the plant having been improperly run, it follows that the plaintiff has not performed its contract; it also follows that whatever damage has been thus caused to the defendant, he should be compensated for in this action." This portion of the charge was not error, and the exception to which our attention is called pointed to this and to no other part of the charge.

The judgment should be affirmed, with costs.

All concur.

Judgment affirmed.