### O'DOHERTY v. POSTAL TELEGRAPH CABLE CO. et al.

(Supreme Court, Appellate Division, Second Department.    June 8, 1906.)

1. WITNESSES—IMPEACHMENT OF PARTY'S OWN WITNESS.
   Where a witness called by plaintiff is afterward called by defendant as his own witness, plaintiff has no right to impeach or contradict him by showing that before the trial he made statements inconsistent with those which he has made as a witness for defendant.

   [Ed. Note.—For cases in point, see vol. 50, Cent. Dig. Witnesses, § 1100.]

2. EVIDENCE—EXPERT EVIDENCE—SUBJECTS—FOUNDATION.
   In an action for personal injuries from the explosion of a boiler, in which the evidence merely showed that a boiler which ordinarily carried 70 pounds pressure exploded when subjected to a pressure of only 40 pounds, while it contained sufficient water, and when nothing was being done by the engineer, it was error to allow an expert to testify that these facts showed that the explosion was caused by the long use of the boiler without repair.

   [Ed. Note.—For cases in point, see vol. 20, Cent. Dig. Evidence, § 2334.]

Appeal from Trial Term, Kings County.

Action by Charlotte O'Doherty, as administratrix of William O'-Doherty, deceased, against the Postal Telegraph Cable Company and another. From a judgment for plaintiff, and from an order denying a motion for a new trial, defendants appeal. Reversed and remanded.

Argued before HIRSCHBERG, P. J., and JENKS, HOOKER, RICH, and MILLER, JJ.

James W. Ridgway (Thomas Kelby, on the brief), for appellant Postal Telegraph Cable Co.

Charles F. Brown (Grant C. Fox, on the brief), for appellant American Telephone & Telegraph Co.

James C. Cropsey, for respondent.

MILLER, J. The plaintiff had a verdict for $19,875 for the death of her intestate, resulting from a boiler explosion alleged to have been caused by the defendants' negligence, and from the judgment entered thereon the defendants appeal.

Our attention is directed to several exceptions which are fatal to the judgment, and it will only be necessary to discuss the evidence sufficiently to understand the points presented by the exceptions which I shall consider. The plaintiff called the engineer who had charge of the boiler (one Colligan), and elicited from him testimony material to the plaintiff's case. Indeed, it could not be contended that without such testimony the plaintiff's evidence presented a question for the jury, even assuming that such testimony did make a case, which we need not now determine. Later said Colligan was called as a witness by one of the defendants, and other testimony was elicited from him thought to be favorable to the defendant's case. He was then cross-examined by the plaintiff's counsel, and denied having made prior contradictory statements, and in rebuttal the plaintiff was permitted to call the witness to whom contradictory statements were alleged to have been made, and said witness was permitted to testify thereto over objection and exception, sufficient to present the question here whether it was error to permit the plaintiff thus to impeach a witness whom she herself had called and elicited material testimony from. It is not disputed that the rule in this state precludes a party impeaching his own witness either by general evidence or by proof of prior contradictory statements made out of court. Whatever the reason for such rule, or whatever our views respecting the soundness of such reasons, it is the rule which courts in this state must respect, unless the Legislature sees fit to change or abrogate it; but counsel for the respondent in a very ingenious and elaborate argument contends that this case presents an exception to the rule, and argues that by showing prior contradictory statements the particular testimony contradicted, and not the witness giving it, is impeached, and he undertakes to justify this distinction by resort to the reason which lies at the foundation of the rule as stated by different text-writers. I do not think the subject can be illumined by a discussion of such reasons which are stated differently by different judges and text-writers. It is undoubted that the original reason, whatever it was, had its origin in conditions no longer existing, and is to-day a fiction; and we shall have less difficulty and be less

likely to err if we confine out investigation to the determination of what the rule actually is as determined by controlling authority in this state. There can be no doubt that the precise question involved here has been at least once squarely decided by the Court of Appeals in a carefully considered opinion (Coulter v. American Merchants' Un. Ex. Co., 56 N. Y. 585), which held, as stated by the headnote, that a party cannot impeach his own witness "although subsequently called as a witness for the adverse party, either by general evidence or by proof of contradictory statements out of court." The same proposition was again held, upon the authority of the case cited supra in Nichols v. White, 85 N. Y. 531, in which Andrews, J., speaking for the court, disposes of the question as though it were not open to discussion by saying in reference to the objectionable testimony in that case, "That it was not admissible by way of impeachment is clear from the case of Coulter v. Am. Mer. Un. Ex. Co., 56 N. Y. 585." Our attention is not called to any other case in the Court of Appeals in which the exact question presented here has been discussed except the case of Fall Brook Coal Co. v. Hewson, 158 N. Y. 150, 52 N. E. 1095, 43 L. R. A. 676, 70 Am. St. Rep. 466. In this case the plaintiff had called a witness apparently by mistake, and, after he had been sworn and asked a few formal questions, had dismissed him without eliciting anything material to the case. Subsequently he was called by the defendant, and the court held that the plaintiff had not so far made him its witness as to be precluded from impeaching him after being called by the defendant; placing its decision upon the ground that merely calling the witness and having him sworn without eliciting anything material to the case did not make him a witness of the party thus calling him within the rule precluding a party impeaching his own witness; and the opinion of Parker, C. J., clearly assumes that, had the plaintiff elicited anything material to the case, he could not thereafter have impeached the witness, although such witness subsequently was sworn for the defendant, and the case of Coulter v. Am. Mer. Un. Ex. Co., supra, is referred to as stating the undoubted law on the subject in this state. The respondent, however, insists that these cases are overruled as an authority upon this point by Hubner v. Metropolitan Street R. Co., 77 App. Div. 290, 79 N. Y. Supp. 153, affirmed without opinion 177 N. Y. 523, 69 N. E. 1124. It is true that the statement of the learned judge writing for the Appellate Division in the case last cited tends to support the respondent's contention. In that case the plaintiff had called a witness and examined him in reference to matters material to the issue. On cross-examination the defendant made the witness its own by examining him as to other matters, in respect to which the plaintiff was then permitted to cross-examine the witness, and to examine him in reference to contradictory testimony given by him on a former trial of the action, and to read such testimony to the witness, and thereafter such contradictory testimony was read in evidence. The respondent here concedes that, although objection was made to the cross-examination of the witness respecting his prior testimony and to the reading of such testimony, no objection was made when it was offered and read in evidence. Although a party may not impeach his own witness, there are a variety of circumstances, resting largely in the discretion of the trial judge,

under which a party may be permitted to cross-examine a witness
called by him, and to call his attention to prior statements made, for the
purpose of refreshing his recollection, inducing him to correct his
testimony by showing him that he is mistaken, or even for the purpose
of showing the circumstances which induced the party to call him.
Bullard v. Pearsall, 53 N. Y. 230. The examination in the case relied
upon, so far as it was objected to, was therefore directly within the
rule, and I think it is clear from the opinion of the learned judge
writing in said case that he had in mind only the right of the party to
subject this witness to a cross-examination. He certainly could not
have intended to announce a rule in apparent conflict with the de-
cision of the Court of Appeals without some discussion calculated to
distinguish such decision, and the cases cited in support of the ruling
of the trial judge, while they did tend to sustain such ruling, do not
touch the question here. Those cases were: Hunter v. Wetsell, 84
N. Y. 549, 38 Am. Rep. 544, which held that, although a party could
not impeach, he could contradict his own witness as to a fact material
to the cause; Becker v. Koch, 104 N. Y. 394, 10 N. E. 701, 58 Am. Rep.
515, which simply held that a party was not bound by the evidence
of a hostile witness, although called by him, but reiterated the rule
that a party could not impeach his own witness either—first, by calling
witnesses to impeach his general character; second, by proof of prior
contradictory statements; or, third, by contradiction by another wit-
ness, when the only effect is to impeach, and not to give material evi-
dence; and the case of Fall Brook Coal Co. v. Hewson, already re-
ferred to; and it seems to me that the affirmance by the Court of Ap-
peals without opinion is the best evidence that the court did not con-
sider that the point was raised by the record, because very recently
that court has said:

"When a decision is made upon full consideration, and judgment is ren-
dered upon well-defined grounds, it cannot be regarded as overruled by a sub-
sequent case in which no opinion was written and no ground of action stated.
We do not overrule important authorities sub silentio." Pratt Institute v.
City of New York, 183 N. Y. 151, 161, 75 N. E. 1119, 1123.

Until, therefore, the Court of Appeals expressly overrules the Coulter
Case, I think we should adhere to the rule that a party cannot take
the position that a witness is worthy of belief when testifying for
him, but entitled to no credit when swearing for the other side.

The plaintiff called a witness, and, after qualifying him as an ex-
pert, propounded the following question:

"Assuming, Mr. Southard, that a vertical boiler eight feet high and four
feet in diameter, beneath which there was a fire; that this boiler was allowed
to carry 70 pounds pressure of steam; that at the given time of which I am
speaking there was a pressure of but 40 pounds of steam, and that the water
was within eighteen inches of the top of the boiler; and that then in that situa-
tion an explosion took place, and the boiler was blown off its foundation, the
house in which the boiler was inclosed was also blown away, and the engineer
was not doing anything to the boiler by the fire or anything at the time;
that he had looked at it two minutes before, and found the pressure of steam
was only 40 pounds, as it was registered—can you state what the cause of that
explosion was?"

To which he answered, "I can." He was then asked to state the
cause of the explosion, to which question each defendant separately

objected, as being speculative and not binding upon it.   The objection was overruled, and each defendant excepted.   The witness then stated, in substance, in answer to this and other questions propounded by the court, that the explosion was due to the imperfect condition of the tubes of the boiler, due to the thinness of the tubes caused by continual wear and tear—by long drawn out use without "reparation." The hypothetical question contained all of the facts established by the plaintiff before resting bearing upon the cause of the explosion, and it must be manifest that to suffer an expert to give an opinion upon such a meager statement of facts is to allow the wildest guesswork.

It is assumed by the respondent that the question embraced sufficient facts to negative the possibility of assigning the cause of the explosion to the negligence of the engineer, and that, as a consequence, the only other assignable cause was some defect in the boiler, which it is claimed is so obvious a conclusion that the evidence was immaterial anyway; but, if so, did it necessarily follow that the defect was due to long use without repair?   It may have been due to an inherent latent defect, for which neither of the defendants was responsible, and there is not a single fact in the hypothetical question in any way tending to indicate the nature or cause of the defect.   Moreover, the witness was permitted to answer the very question which the jury had to answer in determining whether the defendants were negligent, and later to testify, over the specific objection that it was not a proper subject of expert evidence, that the explosion could not have resulted from any other cause than that assigned as aforesaid, to wit, the continual wear and tear of the boiler without repair; and, as the question may recur on a new trial, it is proper to determine now whether the answer called for was a proper subject for expert opinion.   The reasoning in Dougherty v. Milliken, 163 N. Y. 527, 57 N. E. 757, 79 Am. St. Rep. 608, furnishes the solution of this question.   The court (per Werner, J.) say (page 533 of 163 N. Y., page 759 of 57 N. E., 79 Am. St. Rep. 608):

"It may be broadly stated as a general proposition that there are two classes of cases in which expert testimony is admissible.   To the one class belong those cases in which the conclusions to be drawn by the jury depend upon the existence of facts which are not common knowledge, and which are peculiarly within the knowledge of men whose experience or study enables them to speak with authority upon the subject.   If, in such cases, the jury, with all the facts before them, can form a conclusion thereon, it is their sole province to do so.   In the other class we find those cases in which the conclusions to be drawn from the facts stated, as well as knowledge of the facts themselves, depend upon professional or scientific knowledge or skill, not within the range of ordinary training or intelligence.   In such cases not only the facts, but the conclusions to which they lead, may be testified to by qualified experts."

Had the facts not within common knowledge respecting the boiler, its use and operation, the conditions under which it would explode, and the causes producing such conditions, been explained by the expert, the jury, from such facts, together with the facts respecting the previous use and condition of the boiler and the circumstances surrounding and preceding the explosion, could have drawn a conclusion as to the particular cause.   It was for the jury to say whether there was a defect in the boiler of such character and duration as required the defendants, in the exercise of reasonable care and by means of

proper inspection, to have discovered it. There was not a particle of evidence tending to indicate previous misuse of the boiler, and such evidence as the plaintiff had thus far elicited tended to show that it was in good condition, and yet the expert, instead of being confined to matters not of common knowledge, was permitted, not only to answer the very question which the jury had to answer according as they might weigh, give credence to, and make deductions from the evidence, but to guess that the tubes had grown thin from too long use without repair, thereby saving the plaintiff from a nonsuit. The respondent seeks to sustain the ruling by a line of authorities which held that it was proper to allow an expert to testify that sparks of a given size could not have been omitted from the smokestack of a locomotive if the spark arrester had been in proper condition. Had the expert been asked in this case whether a boiler having a capacity of 70 pounds pressure would explode under a pressure of 40 pounds of steam in case a proper amount of water was in the boiler, unless there was some defect in the boiler, the cases cited would be more in point. The judgment and order should be reversed, and a new trial granted; costs to abide the event. All concur.