### BECKER v. HART et al.

(Supreme Court, Appellate Division, Second Department. December 30, 1909.)

1. BILLS AND NOTES (§ 537*)—BONA FIDE PURCHASERS—QUESTION FOR JURY.
   Evidence alone that plaintiff purchased the note in suit, made by unquestionably responsible persons, when it had less than six weeks to run, for but a little more than one-half its face value, raised for the jury the question of plaintiff's bona fides.
   [Ed. Note.—For other cases, see Bills and Notes, Dec. Dig. § 537.*]

2. BILLS AND NOTES (§ 537*)—BONA FIDE PURCHASERS—QUESTION FOR JURY.
   Evidence *held* to raise for the jury the question whether plaintiff was a bona fide owner of the note in suit.
   [Ed. Note.—For other cases, see Bills and Notes, Dec. Dig. § 537.*]
   Burr and Jenks, JJ., dissenting.

On reargument. Judgment and order reversed.
For former report, see 129 App. Div. 511, 113 N. Y. Supp. 1053. For report on order of reargument, see 131 App. Div. 916, 115 N. Y. Supp. 1111.
Argued before HIRSCHBERG, P. J., and JENKS, BURR, RICH, and MILLER, JJ.

John R. Dos Passos, for appellants.
Abraham A. Silberberg, for respondent.

HIRSCHBERG, P. J. The previous decision made in this case was based upon the principle that a party vouches for the general credibility of the witnesses called by him. The plaintiff and her son were called and examined by the defendants as witnesses in their behalf, and it was held that no issue was raised for the determination of the jury on the mere ground of their credibility as interested witnesses. See Becker v. Hart, 129 App. Div. 511, 113 N. Y. Supp. 1053. A reargument was ordered on the question whether the circumstances disclosed by the evidence did not create sufficient doubt and suspicion as to the integrity and good faith of the plaintiff's ownership of the

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

promissory note in suit as to require a submission of the case to the jury. I am clearly of the opinion that a proper case was presented for submission to the jury, and that the trial court had no power to direct the entry of a judgment in conflict with the verdict rendered.

The promissory note on which the plaintiff sues was made and delivered by the defendants to one C. C. Murphy, and by the latter delivered, three or four weeks after its date, to David Levy. It was dated October 5, 1903, and was payable in the sum of $1,825, on December 5, 1903, at the Twelfth Ward Bank. It is conceded that the makers, the defendants, were then, and at all times since have been, abundantly responsible; but Murphy demanded and received an indorsement by a person named Harlam, also presumably responsible. The defendants made payment to Levy on the note at different times until they paid it off. Some, if not all, of these payments were made after the maturity of the note. The note was not produced when these payments were made; Levy claiming that the plaintiff's son, Charles H. Becker, who was in his employ, had lost or mislaid the note and it could not be found. The statement that the note had been lost or mislaid was made in Charles H. Becker's presence. Levy died in the month of April or May, 1904, and about two years thereafter the plaintiff first made claim to be owner of the note, asserting that she had bought it from Levy through the agency of her son, Charles H., and she then instituted this action for the recovery of the amount for which it was given. The note was never protested, and it does not appear that the plaintiff even required Levy to indorse it at the time she claims to have bought it from him. The learned trial court submitted three questions to the jury: First, did the plaintiff become the holder of the note before maturity? To this question the jury answered, "No." Second, did the plaintiff pay anything for the note? To which the jury answered, "No." Third, did the plaintiff, at or before she became the holder, have any notice of any infirmity or defect in the title of the prior holder, Charles Becker, or knowledge of such facts that her acts in taking the instrument amounted to bad faith? To which question the jury answered, "Yes." The jury further found that the note was in fact paid in full by the defendants, and the learned court thereupon directed a verdict and judgment for the plaintiff.

There are many facts and circumstances connected with the plaintiff's alleged ownership of the note which tend to make such ownership a proper consideration for the determination of a jury, and the court could not dispose of the case as involving only a question of law. While the transaction to which the plaintiff and her son testify might, perhaps, possibly be true, it nevertheless differs from the usual and ordinary commercial transactions in so many particulars as to present an issue of fact, aside from any question as to the credibility of witnesses. The purchase of the note was the only transaction of the kind in which the plaintiff had ever engaged. She claims to have bought the note at the solicitation of her son in the middle or latter part of October, 1903, and to have paid for it only the sum of $1,000. The claim is made that Levy needed money at the time and was willing to suffer the enormous loss suggested for the sake of getting ready

cash. There is nothing in the case to indicate why he should not have applied to the makers for the payment of the note at a satisfactory discount, or why he could not have procured a discount at the bank at the usual rate. The plaintiff claims that the payment for the note was made with bank bills which she had kept for 15 or 20 years in a tin box in her house. It appeared, however, that during that same time she had an account in the Brooklyn Savings Bank in her own name, which was opened in 1891 with a deposit of $800, and from which she had drawn small sums from time to time until she had reduced the account at the time of the trial to the sum of $75.48. When confronted with this account at the trial, she volunteered the statement that it represented money for her children; but it appeared that on examination before trial she testified to the existence of the account without this qualification. The note was not protested against the indorser, although the complaint alleges that it was, and no explanation was made why it was not protested, nor can any good reason be suggested, unless it be because Levy was still living at the time of the maturity of the note.

Were there no other unusual or suspicious circumstances in the case than a claim to the purchase of an unquestionably good note, having less than six weeks to run, for but a little more than one-half its face value, that fact alone would have required a submission of the case to the jury. While it is undoubtedly true that a valid purchase of a note may be made for less than its value, the discrepancy may be large enough to indicate falsity and bad faith. "As a general proposition it may be said that the amount paid is otherwise unimportant than as evidence to be considered by the jury upon the question of bona fides." American & English Encyclopedia of Law, vol. 4 (2d Ed.) p. 283. In Canajoharie National Bank v. Diefendorf, 123 N. Y. 191, 25 N. E. 402, 10 L. R. A. 676, it was held that the holders of negotiable paper are only entitled to the benefit of the rule of the commercial law which forbids its validity being questioned, when they have purchased such paper in good faith, in the usual course of business, before maturity, and for full value. In Second National Bank v. Weston, 172 N. Y. 250, 257, 64 N. E. 949, 951, the court said:

"The discount taken may be so great as to impeach the good faith of the purchaser, the same as a chattel may be bought at so much under its true value as to justify the inference that the purchaser knew or suspected that it had been dishonestly acquired by his vendor. Hall v. Wilson [16 Barb. 548] has been cited in several later cases, but an examination of those cases will show that there the rate of discount was so excessive as to warrant the inference of bad faith. In Canajoharie Nat. Bank v. Diefendorf, supra, the notes of a perfectly responsible maker were purchased at a discount of from 15 to 18 per cent. from their face value. In Vosburgh v. Diefendorf, 119 N. Y. 357 [23 N. E. 801, 16 Am. St. Rep. 836], the notes of the same maker were purchased for 50 per cent. of their face value."

In the case then under consideration by the Court of Appeals, the rate of discount was only 8 per cent., and the court held that it was not sufficiently great to predicate upon it any inference of bad faith. The rule, however, was not doubted that a discount might be large enough to predicate such inference upon; and it seems to me that in this case the discount of over 45 per cent. was of itself sufficient to

take the case to the jury. When to this great deduction in the price of the alleged purchase is added the further facts that the purchase was made as an isolated transaction, that the sum of money alleged to have been paid for the purchase had been kept uninvested by a woman of scanty means for a period of 15 or 20 years, notwithstanding that during those years she kept a savings bank account, that parties responsible for the debt were released by lack of protest for no reason which can be assigned, and the purchase was concealed until after the death of the only individual who could successfully challenge its validity, the transaction must certainly be regarded as sufficiently unusual and suspicious, and at least so far inherently improbable, as to raise an issue of fact for the decision of a jury. The judgment and order should be reversed.

Judgment and order reversed on reargument, and new trial granted; costs to abide the event.

RICH and MILLER, JJ., concur.

BURR, J. (dissenting). A reargument was ordered in this case, and it devolves upon us to consider whether we erred in the decision which was previously made. See 129 App. Div. 511, 113 N. Y. Supp. 1053. If we did, we should welcome the opportunity to correct it. On the reargument the point is made that the case should have been submitted to the jury upon the question whether the plaintiff became a bona fide holder of the note in suit before maturity.

At the time of the trial the note was in the possession of the plaintiff. This raises a presumption that it was transferred before maturity for a valuable consideration and that the plaintiff is the lawful holder thereof. Negotiable Instruments Law (Laws 1897, p. 719, c. 612) § 98; Newcombe v. Fox, 1 App. Div. 389, 37 N. Y. Supp. 294. Further evidence as to the time and manner of the acquisition thereof was elicited from the plaintiff and her son, Charles H. Becker, who were called as witnesses for the defendants. It is urged, on the one hand, that when the defendants called these witnesses they vouched for their credibility in general, and cannot now be permitted to impeach their testimony. Coulter v. American M. U. Express Co., 56 N. Y. 585; Nichols v. White, 85 N. Y. 531; O'Doherty v. Postal Telegraph-Cable Co., 112 App. Div. 636, 99 N. Y. Supp. 351; Berkowsky v. New York City Railway Co., 127 App. Div. 544, 111 N. Y. Supp. 989. On the other hand, it is urged that, while the general rule may be as above stated, when the exigencies of the case require the calling of an adverse party as a witness, if there is in the evidence such improbabilities or contradictions as fairly to raise a question as to its credibility, then it becomes the province of the jury to determine where the truth lies. Becker v. Koch, 104 N. Y. 394, 10 N. E. 701, 58 Am. Rep. 515; Pres't, etc., of Manhattan Co. v. Phillips, 109 N. Y. 383, 17 N. E. 129; De Meli v. De Meli, 120 N. Y. 485, 490, 24 N. E. 996, 17 Am. St. Rep. 652.

Both propositions seem to us to be correct. There is a distinction between impeachment and contradiction. Impeachment attacks a witness' honesty; contradiction, his accuracy. A witness may be contra-

dicted by other witnesses or by circumstances. His own testimony as to essential facts in the controversy may so vary in different portions thereof, or may be so inherently improbable, that it may be deemed thereby contradicted. A witness may be truthful, in the sense that he desires to tell the truth, but inaccurate, and for that reason his testimony may not be in accord with the facts. But, even where a party is called as a witness in his own behalf, if there is nothing to contradict or discredit his testimony, his evidence cannot be disregarded. A fair argument must be made against the probability of a story before it presents a question for the jury. Gordon v. Ashley, 191 N. Y. 186, 83 N. E. 686; Hull v. Littauer, 162 N. Y. 569, 57 N. E. 102; Second Nat. Bank v. Weston, 172 N. Y. 250, 64 N. E. 949. Much more must this be the case when his adversary calls him, for he thereby asserts his confidence that he intends to tell the truth.

We propose, therefore, to consider the question whether, upon a review of all the competent evidence in the case, there is a fair conflict of testimony as to when and for what consideration the plaintiff became the owner of the note in suit. When this question is correctly answered, the case is solved, because, if the plaintiff acquired the note before maturity and in good faith, payment to the former holder thereof is no defense. If she acquired it after maturity, she became the mere assignee of a chose in action, and payment to her assignor without notice of her claim would be a good payment. We have used the expression "competent evidence," because a part of the testimony offered by the defendants related to personal transactions between them and David Levy, now deceased, through whom the plaintiff claims title. Such testimony was clearly incompetent. Code Civ. Proc. § 829. It was properly and seasonably objected to, the objection was overruled, and plaintiff excepted. There was also some testimony elicited by the defendants of declarations made by the plaintiff's son, but not in her presence, from which the defendants seek to draw the inference that David Levy had never parted with the title to the note. This was also received against plaintiff's objection, and an exception to the admission of the evidence was duly taken. This was also incompetent; for, if it be conceded that Charles H. Becker acted for his mother in connection with the purchase of the note, his agency then terminated, and she could not be bound by subsequent declarations of his, hostile to her interest. There is no suggestion that, if these objections had been sustained, the defendants could have overcome the difficulty by the introduction of other evidence. Therefore, in determining the correctness of the disposition of this case by the learned trial court, such testimony should be disregarded.

Starting with the presumption in plaintiff's favor from her possession of the note, unless there is competent evidence to overcome this presumption, judgment must go for the plaintiff. Construing the testimony most favorably to the defendants, it appears that the note was dated October 5, 1903, was payable two months after date, and was for $1,825. About three weeks afterwards it was seen in the possession of David Levy. Charles H. Becker, the plaintiff's son, was in his employ. Before the note became due, David Levy, at one time the owner and holder thereof, was in need of money. He was endeavor-

ing to collect something from the defendants on account of the note before its maturity. About the middle of October, 1903, plaintiff's son told her that Levy needed money, and that if she would give him $1,000 for this note she could have it. She had $1,000 in cash in a tin box in her house, which she had been accumulating for a long period of years. She gave it to her son, who afterwards handed her the note. A short time afterwards, and about the time of its maturity, he took it from her for a few days, then returned it to her, and she has ever since had it in her possession. David Levy died by his own hand April 24, 1904. Although there was an indorser upon the note, it was not protested when it became due, and no action was begun to enforce payment thereof until April, 1906. The defendant Frieda Hart during the entire time was the owner of valuable property in the city of New York. This was plaintiff's first and only note transaction, and she was evidently a person of limited intelligence and education. Between October 1, 1891, and March, 1907, the plaintiff had on deposit to her credit in the Brooklyn Savings Bank a small sum of money. At no time did this credit exceed the sum of $800. The last deposit was made in January, 1902; but drafts in the meantime had reduced the account so that the balance was only about the sum of $600. After that date drafts were made from time to time, so that in March, 1907, only $75 remained. Upon the trial she stated that this money, although standing in her name, really belonged to her children. In her examination before trial she omitted to state that fact, although she says that her attention was not then called to it, nor was she asked about it.

This fairly summarizes all of the evidence in the case relative to the transfer of the note that was properly received. Suppose that, after the plaintiff had put the note in evidence and had rested, the defendants had called the plaintiff as a witness and had asked her four questions: First, "When did you acquire this note?" and she had answered, "About three weeks after its date;" second, "What did you pay for it?" and she had answered, "One thousand dollars;" third, "Where did you obtain the money?" and she had answered, "From a tin box which I kept in my house where I had been accumulating it for a long period of years;" and, fourth, "Has the note ever since been in your possession?" and she had answered, "Yes, except for a few days at about the date of its maturity, when my son had it"—and then had rested. Would any one pretend that such evidence was sufficient to overcome the presumption that arose from the possession of the note? Yet that is all there is in this case.

Evidence was also received that subsequently to October, 1903, the defendants paid to David Levy in various installments the entire balance then remaining unpaid upon said note. This evidence was incompetent under section 829 of the Code, and was received upon an undertaking on the part of the defendants to connect the plaintiff with knowledge thereof. There was no evidence to that effect. But, if it had been properly admitted, the concession is important that at the time these payments were made the defendant Levy did not produce the note, and that the defendants did not see it. It is suggested that the plaintiff's son may have stolen the note from Levy's possession, or

extracted it from his papers after his death, and is now attempting to collect the same in his mother's name. It seems to us a much more reasonable suggestion that Levy did obtain from her $1,000 upon the note, and desired to conceal that fact from the defendants, as he was then in need of money, and before its maturity was seeking to obtain payments from them on account of it. This would also explain why the note was not protested. Levy knew that the makers were perfectly good, and he did not wish them to know that the note had been transferred. Probably he intended to repay the plaintiff the money which he had obtained from her, at some future time, get back the note, and deliver it up to the defendants. His clerk, the plaintiff's son, was endeavoring to aid him in his purpose, which was never fulfilled, because of his death shortly after.

Upon that theory, every circumstance which the defendants claim is suspicious would be fully explained. The statement that plaintiff had $1,000 in cash in her house is not so contrary to experience that this fact alone would raise an issue. When it is sought to prove a fact by circumstantial evidence, and the circumstances point as much to the nonexistence as to the existence of the fact, or point in neither direction, the fact must be deemed not proven. Cordell v. N. Y. Central and Hudson R. R. R. Co., 75 N. Y. 330. But the rejection of the whole of the testimony of Mrs. Becker and her son would not warrant the jury, in the absence of any other evidence, in basing an affirmative finding of fact upon the assumed falsity of such evidence to the contrary. Kirby v. D. & H. C. Co., 20 App. Div. 473, 46 N. Y. Supp. 777; Hankinson v. Vantine, 152 N. Y. 20, 46 N. E. 292. In the Kirby Case the court say:

"A party upon whom it is incumbent to prove an alleged fact cannot call his adversary as a witness as to that fact, elicit testimony from him to the effect that such alleged fact has no existence, and then call upon the jury to discredit the evidence of such adversary simple because he is interested as a party, and to base upon the assumed falsity of his evidence an affirmative finding of the existence of such alleged fact, without any other evidence of its existence, or from which it may be inferred."

To submit the question of plaintiff's bona fide ownership of this note to the jury would be to permit them arbitrarily to find, without any evidence to support it, that the plaintiff was not the holder of the note in due course for value. This may not be done. Gordon v. Ashley, supra. While it may be unfortunate for the defendants if they have to pay the note a second time, they are certainly chargeable with want of ordinary business prudence if they did make payments on the note without insisting upon the production thereof.

The judgment and order appealed from should be affirmed, with costs.

JENKS, J., concurs.