(173 App. Div. 440)

### PEOPLE v. SPEEKS et al.

(Supreme Court, Appellate Division, Second Department. May 26, 1916.)

1. RAPE ☞54(2)—EVIDENCE—CORROBORATION OF PROSECUTRIX.

From the circumstances that accused dodged behind bushes near a cemetery in the vicinity of the crime, when approached by witnesses, and that he later talked of having forced a girl to submit to him in a cemetery, or from the latter fact alone, if the witness so testifying could be believed, the jury could have found corroboration of the prosecutrix, who testified to the commission of the act in a cemetery.

[Ed. Note.—For other cases, see Rape, Cent. Dig. § 84; Dec. Dig. ☞54(2).]

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

2. CRIMINAL LAW ☞1163(3)—IMPEACHMENT OF WITNESS—PRESUMPTION OF PREJUDICE.

If the district attorney impeached his own witness, who gave the only testimony corroborating the accused, presumptively the jury regarded him as a discredited witness, and the impeachment, if error, was prejudicial.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 3094, 3095; Dec. Dig. ☞1163(3).]

3. WITNESSES ☞316—IMPEACHMENT—BAD FAITH.

Mere estimate of time by a witness, varying at the grand jury examination and at the trial, does not of itself impute bad faith, where it was shown that the crime testified to was committed after dark.

[Ed. Note.—For other cases, see Witnesses, Cent. Dig. § 1079; Dec. Dig. ☞316.]

4. WITNESSES ☞321—RIGHT TO IMPEACH.

The district attorney, who produced a witness for the state, could not, when such witness was later called by the defendant and questioned on new matters, impeach him by showing that his testimony in chief for the state was false or contradictory, where he testified in general as was anticipated, and there was no surprise.

[Ed. Note.—For other cases, see Witnesses, Cent. Dig. §§ 1094, 1099, 1100; Dec. Dig. ☞321.]

Appeal from Nassau County Court.

William Speeks and Benjamin Shearer were convicted of rape in the second degree, and they appeal. Reversed, and new trial ordered.

Argued before JENKS, P. J., and THOMAS, CARR, MILLS, and RICH, JJ.

George B. Stoddart, of Mineola (Henry L. Maxson, of Hempstead, on the brief), for appellants.

Charles I. Wood, Asst. Dist. Atty., of Mineola (Lewis J. Smith, Dist. Atty., of Mineola, on the brief), for the People.

THOMAS, J. [1] As she testified, Helen Horton, a colored girl 12 years old, returning on October 10, 1915, to her home from that of the defendant Speeks, where she had gone during the Sunday afternoon, was seized by the defendants, who accompanied her, and carried with her arms bound and eyes bandaged to the adjoining graveyard, and raped by each of them. Having later rid herself of her bonds, she walked to the colored church, remained during the service, and then went to her house, hid her underclothing, discolored by blood, her petticoat stained, and her dress soiled with dirt, and without disclosure continued for some weeks about her occupations, which included the housework, which usually fell to her mother, sick at the time; but about two weeks after the assault it became known, and the defendants' arrest and conviction of rape in the second degree followed. That some one had done the act charged appears clearly from the girl's testimony, given with an intelligence and clearness that would be convincing, were not corroboration required by the statute. That she had been subjected to sexual intercourse was corroborated by the condition of her clothing, the deformity of her gait, and the conditions found by the physician. To doubt the fact would be to sacrifice apparent truth to an overrefinement of a technical rule.

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

But was there corroboration of her testimony that the defendants, one or both, did the act? Both lived at the house of Speeks, where she was; the three started from the house between the hours of 6 and 7, although the defendants and Speeks' wife state that neither defendant went with the girl, that the men did not leave the house together, and the wife says that the girl went about 10 minutes after Speeks. The three of them, apart as they and Speeks' wife state, together as the girl says, went on the road where the girl was seized and past the cemetery to which she was taken. Between the hours of 6 and 7, and after it was dark, Levy and Seaman, walking along the same road past the cemetery, saw Speeks in front of them disappear in the bushes, and later confronted him, whereupon he accounted for his conduct upon the ground that he saw them approaching and jokingly did what he did. The fact that he sought concealment in the bushes until he was revealed by the men indicated a consciousness of guilty relation to the act that had been done in a proximate place. Shearer was not by the same evidence connected with the complainant's accusation. But there was some further evidence that tends to corroborate the girl, viz., statements of the defendants concerning a similar act done by them in a graveyard that in its details sufficiently coincides with the act in question. The defendants, Horton, the girl's stepfather, Levy and others, worked on a barge, and, as Horton testified, he heard the defendants talking to the effect that they made a girl submit to them in a graveyard on Sunday night. If the jury was entitled to believe such evidence given by the girl's stepfather, the girl was corroborated in her implication of the defendants.

[2] But Levy, called by the defendants, gave testimony which the jury could have accepted as against Horton's statement, although Levy even admitted upon cross-examination that the defendants were talking of women, living out of the town, however, with whom they had sexual relations. If there could be any sufficient corroboration as to Shearer, it was the defendant's admissions, to which Horton testified; but as to Speeks the jury could have found corroboration, either by reason of his going into the bushes, which he admitted, or by reason of what he said on the boat, or by both such concealment and admissions. Of course, other facts would be associated necessarily in the consideration of such evidence. But it cannot be known how much either piece of evidence influenced the jury, and as the identification of the defendants with the offense is corroborated scantily, although sufficiently, it is necessary to scrutinize the fact that the district attorney declared on the trial that he intended to impeach Levy, who had been his witness, and to ask that he be committed for perjury. If, now, the district attorney did impeach Levy's credibility, the jury presumptively regarded him as a discredited witness, whose testimony should not weigh against that of Horton as to the defendant's admissions on the barge. In that case the impeachment worked against both defendants, and deprived them of any testimony, save their own, to meet Horton's story, which was important corroboration as to both of them and a vital item of corroboration as to Shearer. So I consider whether the district attorney did impeach Levy and whether he had a right to do so.

[3] Levy, called by the people, testified that on the night and road in question, at 6 or half past 6, he saw somebody duck in the bushes, and at once the district attorney sought to show that before the grand jury the witness had said "about 8 o'clock." After denial by the witness, the district attorney read the question and answer before the grand jury; but the court did not permit the witness to verify or disclaim them. Levy's mere estimate of time, even if it was incorrect, of itself did not impute bad faith to the witness, especially in view of the evidence as to hour and the darkness. But no harm would have come from allowing the question merely to quicken the witness' recollection. Upon cross-examination the witness did not materially change the effect of his testimony, not even as to questions touching some of the contents of an affidavit which he had made.

[4] I do not so far discover any indications of unfairness on the part of the witness, or occasion to accuse his honesty or impartiality. But on redirect the witness was asked if he knew what perjury is; if he testified before the grand jury:

"Did you see either of these two defendants, Shearer or Speeks?" "Do you remember saying before the grand jury that it was 8 o'clock when you saw this man passing?" "What time of night was it you say you saw him? A. Going on 8 o'clock, somewhere around there." "How near did you go to him? A. About ten yards behind him."

But the evidence was excluded. In whatever way the questions had been answered, the fact of his meeting Speeks would have been established, for neither Levy, Seaman, nor Speeks differed as to the fact itself, viz., that Speeks ducked in the bushes in the darkness, and the men found him, and that the hour was between 6 and 7. As their last witness but one, Levy was called by defendants, and testified as to the conversation on the barge in such way as to impair in a degree Horton's story. The district attorney briefly questioned him as to that incident, and then took up the affidavit, to which no allusion had been made by defendants after recalling Levy, and after some questioning the district attorney caused it to be marked in evidence. Thereby was brought into evidence matters to which at no time during the trial had either party questioned the witness, viz., the controversy between Speeks and Maddox, the statement in the affidavit that Levy did not want or expect pay. Then the district attorney recurred to the witness' testimony before the grand jury, and asked if Levy did not there testify:

"'Q. Didn't you see these boys? A. One night about two weeks ago, I saw somebody sitting on the sidewalk, and then the fellow ran.' Do you remember that? A. Yes. Q. Did you so testify?

"Mr. Maxson: I object to it, on the ground it is an attempt to impeach the witness.

"Mr. Smith: That is exactly what it is for, to impeach the witness you put on the witness stand."

And thereupon the objection was overruled, and an exception taken, and the witness answered, "I said that;" but he stated that it was not true. Then the witness was asked whether before the grand jury he gave other evidence, read to him, and he answered that he had, but declared as to much of it that it was false, and that as to some of it

he knew that it was false when he made it. The court received the evidence upon the theory that the defendants had recalled Levy as their witness, and that the people could attack his testimony, and the district attorney interpolated into the discussion, "I intend to ask for his commitment for the crime of perjury;" but at the instance of defendants' attorney the court directed the jury to disregard the remark. The result was that the district attorney showed that Levy had testified corruptly before the grand jury, not concerning anything said on the barge, not touching matters of which the defendants' counsel upon calling Levy had examined him, but as to matters for which the people had initially called him—and as to which his testimony stood fair—even if subject to amendment in one or two particulars. The evidence before the grand jury so elicited was in some respects less favorable to the people than that given on his direct examination by the district attorney, and it would be unfair to the recognized ability of the district attorney to suggest that he called it out to account for surprise or to quicken the recollection.

It is clear that his impulse was to sacrifice Levy as his own witness, whom he did not need, after Seaman and Speeks had testified to the incident on the road, so that he might destroy the force of his testimony as to the conversation on the barge. The impeaching evidence had no direct reference to the incident on the barge; but the district attorney first put in the affidavit, and thereby some matters not before in evidence, and then impeached Levy specifically as his own witness, and generally as a witness for the defendants. And it is urged that this was within the examiner's right. As I have said, the questions were not asked to explain surprise or to stimulate recollection, but to impeach the witness, as the examiner declared the purpose to be, and as the court understood, while the jury could not have misunderstood it. The questioning, I repeat, was not to contradict that to which Levy had testified on recall, as it had no relation to it, although it did hurt that testimony by disparaging the witness. It had some injurious bearing on the testimony he had given when called by the people; but, so far as I note, that related to the hour, although the witness' testimony as to hour fits well the other evidence in the case in that regard. The district attorney, by introducing the affidavit and what the witness had testified before the grand jury, brought out the evidence that conflicted and hurt his first direct evidence, and then the charge of perjury was based upon such evidence so voluntarily brought into the case by the people.

I cannot regard the error as negligible, as the corroborative evidence was no more than sufficient. I find no authority that justifies a party in impeaching a witness who testifies to new matter for his adversary, by showing that somewhere else he said something that does not dispute such evidence, but does show that he elsewhere made corrupt statements that disputed his evidence elicited by the first party calling him. That is, the district attorney showed that his own witness was corrupt, although he testified generally to what was expected and what the party wanted to prove, so as to show that he was unworthy of belief as to the new matter brought out by his adversary. It is true that

another witness was not called to impeach Levy; but he, as a witness on the trial, is made to show that he committed perjury before the grand jury. It is the same in result whether a party impeaches his witness out of his own mouth or the mouth of another. I refer to decisions to indicate that such use of a witness is without any authorization.

The learned counsel for the respondent refers to Becker v. Koch, 104 N. Y. 394, 401, 10 N. E. 701, 58 Am. Rep. 515. The second group of cases in the summary is that the party cannot impeach his witness by "proof of prior contradictory statements" by him; but respondent urges that he may do so where a "basis is laid for it by a showing of surprise." But what evidence, save as to the hour, had so surprised the district attorney that he would prove his witness a perjurer, either here or before the grand jury? In Hunter v. Wetsell, 84 N. Y. 549, 555, 38 Am. Rep. 544, it was decided that the plaintiff was at liberty to contradict the defendant as to the matter to which he testified for himself; but I do not understand that such evidence tended to impeach him as to the things to which he testified for the plaintiff. In Hubner v. Metropolitan Street R. Co., 77 App. Div. 290, 79 N. Y. Supp. 153, affirmed 177 N. Y. 523, 69 N. E. 1124, the witness, first for the plaintiff and then for the defendant, was contradicted as to the new matter called forth by the defendant by the use of his testimony given on a former trial. But he was not cross-questioned as to points touched upon by the plaintiff on the direct examination. Such, also, was O'Doherty v. Postal Telegraph-Cable Co., 113 App. Div. 636, 99 N. Y. Supp. 351. The cross-examination of the witness, and not his impeachment, was deemed to be involved, and it was considered that the case fell within the rule that:

"A party may be permitted to cross-examine a witness called by him, and to call his attention to prior statements made, for the purpose of refreshing his recollection, inducing him to correct his testimony by showing him that he is mistaken, or even for the purpose of showing the circumstances which induced the party to call him."

But it was decided that the party calling him could not, after the same witness was called by the adverse party, impeach him, "either by general evidence or by proof of prior contradictory statements made out of court." In Power v. Brooklyn Heights Railroad Co., 157 App. Div. 400, 142 N. Y. Supp. 592, it was decided that where the former employé of the defendant, called as a witness by such defendant, showed hostility, and testified that the defendant's conductor had pushed the plaintiff from the car, and stated that the report signed by him, and which did not contain such statement, was false, the defendant was not entitled to introduce the report in evidence for the purpose of discrediting its own witness. It was said:

"The New York authorities are to the effect that a party calling a witness cannot attack his credibility by general evidence of character (People v. Safford, 5 Denio, 112, 118; Thompson v. Blanchard, 4 N. Y. 303), or prove by other witnesses self-contradictory statements (Nichols v. White, 85 N. Y. 531, 535; O'Doherty v. Postal Telegraph-Cable Co., 113 App. Div. 636 [99 N. Y. Supp. 351], or show prior inconsistent statements in order to discredit him (Berkowsky v. New York City R. Co., 127 App. Div. 544 [111 N. Y. Supp. 989]; Bernstein v. Empire Bridge Co., 146 App. Div. 529 [131 N. Y. Supp. 129], affirm-

ed, 205 N. Y. 603 [98 N. E. 1098]), though he may recall to his witness' attention statements he has previously made so as to draw out details of fact, or explain any apparent inconsistency (Bullard v. Pearsall, 53 N. Y. 230; Maloney v. Martin, 81 App. Div. 432 [80 N. Y. Supp. 763]; Id., 178 N. Y. 552 [70 N. E. 1102]; and sometimes to show how counsel came to call the witness so as to account for the surprise or to show any deceit practiced (Bullard v. Pearsall, 53 N. Y. 230, 231; Coulter v. American Merchants' Un. Ex. Co., 56 N. Y. 585)."

In People v. Kelly, 113 N. Y. 647, 21 N. E. 122, it appeared that the examiner avowed his purpose to refresh the recollection of the witness, and it was held that the method pursued for that end was proper. The purpose was to furnish something that the witness had omitted to testify in detail as to the movements of the defendant in an interval of time, and to that end the district attorney asked the witness whether he had not previously sworn that the defendant "moved coolly across from the northeast to the southwest corner of the room where O'Shea stood, and also whether Kelly did not then address her in a low and quiet tone of voice." The witness admitted that he had so testified and stated that the fact was true, but the opinion is: "He had given no evidence conflicting with this statement, and it tended in no degree to contradict his testimony"—although the manner of drawing it out might affect the credibility of the witness with the jury.

In Maloney v. Martin, 81 App. Div. 432, 80 N. Y. Supp. 763, affirmed 178 N. Y. 552, 70 N. E. 1102, it was decided that a witness developing "hostility to the party calling him may be subjected to cross-examination by such party, if the trial court is satisfied that the witness is adverse, or that the party has been tricked into placing him upon the stand," and that the "cross-examination is within the discretion of the trial court, and is dependent upon the circumstances of the particular case," and that:

"While the witness may not be cross-examined as to statements contained in an affidavit verified by him, which are contradictory of the testimony given by him at the trial, for the purpose of assailing his credibility, the witness may be cross-examined as to such matters, when the main purpose thereof is to enliven his recollection or to explain his testimony in the light of his former sworn statements, or to account for the surprise of the counsel at the trial, although the cross-examination may incidentally cast reproach upon the witness."

It seems that the witness had before the trial made an affidavit that induced the party to call him, and the examiner was surprised when the witness departed from the statements in the affidavit. The affidavit itself was excluded, but the counsel read from it verbatim, or used it for the text for his inquiries. The court stated that the cross-examination was not for the purpose of disparaging the witness, but to refresh his recollection, and that it would not have been policy for the plaintiff's counsel to discredit the witness. But it was said:

"There is, however, one general rule of evidence which seems to have been settled out of the prolonged discussions by the courts, even in the examination of adverse witnesses, and that is that a party may not impeach his own witness, either directly or by proving his prior contradictory statements."

In People v. Sexton, 187 N. Y. 495, 80 N. E. 396, 116 Am. St. Rep. 621, it appeared that the district attorney, in examining hostile and unwilling witnesses, the wife and daughter of the defendant,

plied them with leading questions and cross-examined them, with the result that they contradicted none of their earlier statements tending to favor the defendant, but reiterated them. It was said that a witness may not be impeached by the party at whose instance he testifies, with the exception that:

"When a witness proves hostile or unwilling, the party calling him may probe his conscience or test his recollection, to the end that the whole truth may be laid bare."

In Fleischer v. Metropolitan Street R. Co., 63 App. Div. 44, 71 N. Y. Supp. 382, it was decided on the authority of Becker v. Koch, 104 N. Y. 394, 10 N. E. 701, 58 Am. Rep. 515, that a party surprised by damaging testimony given by a witness called by him is not entitled to show that the witness had made prior statements contradictory thereof. It was attempted to show the contradictory statements by an affidavit which the witness stated he had not verified, but which he seems to have signed. The affidavit was then read to the witness for the purpose of showing that this witness had made a statement under oath in direct conflict with what he testified to on the stand. Evidence was also given by other witnesses to disprove a statement made by the first witness that the attorney had told them what testimony he expected them to give, and that such witness had made and sworn to the affidavit. For the error in admitting the evidence, the judgment was reversed.

In Coulter v. American Merchants' Un. Ex. Co., 56 N. Y. 585, it was decided that a party may contradict his own witness as to a material fact, although he may thereby discredit him, but that he cannot impeach him, although subsequently called as a witness for the adverse party, either by general evidence or by proof of contradictory statements out of court. The driver of a wagon causing personal injury was called by the plaintiff to prove employment by the defendant, and was later called by the defendant and testified that he did not drive upon the sidewalk. Upon cross-examination he was asked if he did not make a declaration to a person named, admitting that he did drive upon the sidewalk, and he denied it, and upon rebuttal such person was called by the plaintiff and testified that the driver did make such declarations. The opinion states:

"In conclusion, I can find in the authorities no ground for saying that Willard was not the plaintiff's witness throughout the trial, nor for holding that she was at liberty to impeach him in the manner attempted."

In Fall Brook Coal Co. v. Hewson, 158 N. Y. 150, 52 N. E. 1095, 43 L. R. A. 676, 70 Am. St. Rep. 466, the defendant called a witness, who was excused without giving any material testimony; but the plaintiff on rebuttal called the same witness, by whom material evidence was given in favor of the plaintiff. The defendant claimed the right to cross-examine him as to whether he had not made contradictory statements, but Wilson denied having made them, and thereupon the defendant called witnesses who testified that the witness Wilson had made such contradictory statements. The decision finally rested upon the ground that the witness had not become the witness

of the defendant, and that he was not precluded from impeaching his credibility, but it was stated that:

"The rule is well settled in this state that a party cannot show inconsistent statements made by his own witness for the purpose of impeaching him."

In People v. De Martini, 213 N. Y. 203, 107 N. E. 501, L. R. A. 1915F, 601, it appears that immediately after the commission of a crime the witness identified the defendant as the person who had shot a policeman, and at the trial his testimony coincided with his prior statements, but with much hesitation he identified the defendant as the man who had fired the shot. On cross-examination he retracted the identification and admitted that he had sworn falsely in the coroner's court. On redirect examination the district attorney was given great latitude, but elicited nothing new except that the witness claimed to have been intimidated by various persons who were presumably friends of the defendant. Thereafter the district attorney called a witness, who testified under objection that he was present when the witness and others pointed out the defendant as having fired the shot. It was held that such evidence was incompetent, whether offered to support the evidence of the witness or to impeach him. It was said in the opinion that the district attorney was manifestly surprised, and that it was therefore proper to give him great latitude in re-examining the shifting witnesses, but that the rulings permitting this would be fairly defended by the exigencies of the case. Judge Werner discusses to an extent the general question under consideration, but places the reversal upon the ground stated.

In Carlisle v. Norris, 215 N. Y. 400, 109 N. E. 564, the witness called by the plaintiff testified to facts tending to prove his case and to others negativing his right to recover. The plaintiff insisted he was entitled to take advantage of the witness' testimony which was beneficial, but to have the jury say whether the remainder of his testimony was truthful. It was held that there was nothing inherently improbable in the evidence, and that under the circumstances the witness appeared as one whose general credibility and reliability was vouched for by the plaintiff, and it was said that:

"His evidence cannot be rejected upon mere suggestion, supported by no evidence or contradicting probabilities."

I have reviewed these cases to illustrate that there is no foundation for the contention of the district attorney that he could impeach a witness called by him and later by the defendant, especially where the perjured evidence did not relate to the testimony given by him in behalf of the defendant, but rather to the testimony which he gave on his first direct examination, when the witness made a fair statement, and one which was in furtherance of the prosecution's theory, but which was either destroyed or impaired by the impeaching evidence introduced.

The judgment of conviction of the County Court of Nassau County should be reversed, and a new trial ordered. All concur.