## WESTERN UNION TELEGRAPH CO. v. HUGHES.

(Circuit Court of Appeals, Fourth Circuit. November 4, 1915.)

### No. 1375.

1. MASTER AND SERVANT ☞78—BENEFIT FUNDS—LIABILITY—"CLAIMS ARISING FROM OR GROWING OUT OF DEATH OF EMPLOYÉ."

A telegraph company adopted a plan for the payment of accident benefits to employés and life insurance to their beneficiaries, which provided that the acceptance of any benefits should operate as a release of all claims against the company, and that in case of death no part of the benefits should be due or payable unless a release should be delivered of all claims against the benefit fund and against the company "arising from or growing out of the death of the employé," and that should claim otherwise than thereunder be presented or suit brought against the company, or against any other corporation which might be associated with the company in the administration of the fund, the employé or his beneficiaries should not be entitled to any payment from the fund unless such claim should be withdrawn or such suit discontinued. It further appeared from the plan that this reference to other corporations referred to other allied telegraph and telephone companies. The company had agreed to indemnify a railroad company against all loss or damage arising from injuries to the telegraph company's employés while being carried free or at half rates by the railroad company, but it did not appear that a telegraph employé killed in a railroad accident knew of this agreement or was chargeable with knowledge thereof. Held, that the telegraph company could not require a release of the railroad company as a condition of the payment of the insurance, as its liability to the railroad company was not a "claim arising from or growing out of the death of the employé," while the ref-

---

erence to other corporations against, which claims might not be made or suit brought excluded corporations not so specified.

[Ed. Note.—For other cases, see Master and Servant, Dec. Dig. &⟶78.]

2. MASTER AND SERVANT &⟶77—BENEFIT FUNDS—CONSTRUCTION OF AGREEMENTS.

The plan, having been prepared and put into effect by the telegraph company, should be strictly construed against it, under the rule that the words of an insurance policy should be taken most strongly against the insurance company, and that that interpretation should be adopted which is most favorable to the insured if not inconsistent with the language used.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 105, 106; Dec. Dig. &⟶77.]

In Error to the District Court of the United States for the Eastern District of South Carolina, at Florence; Henry A. Middleton. Smith, Judge.

Action by Mrs. Sophia Hughes against the Western Union Telegraph Company. Judgment for plaintiff, and defendant brings error. Affirmed.

F. L. Willcox, of Florence, S. C. (Geo. H. Fearons, of New York City, on the brief), for plaintiff in error.

R. E. Whiting, of Florence, S. C. (Whiting & Baker, of Florence,. S. C., on the brief), for defendant in error.

Before PRITCHARD, KNAPP, and WOODS, Circuit Judges.

KNAPP, Circuit Judge. [1] On January 1, 1913, the plaintiff in error, defendant below, adopted and put into effect a "Plan," as it is called, for the payment of pensions and accident and sickness disability benefits to employés, and of life insurance to their beneficiaries in case of death. This plan contained the following provision:

"The acceptance of any benefits from the Employés' Benefit Fund by an employé or his beneficiary or beneficiaries on account of injury or death, shall operate as a release and satisfaction of all claims against the company for damages arising from or growing out of such injury or death, and further, in the event of the death of an employé no part of the death benefit or unpaid disability shall be due or payable unless and until good and sufficient release shall be delivered to the committee, of all claims against the Employés' Benefit Fund as well as against the company, arising from or growing out of the death of the employé, said release having been duly executed by all who might legally assert such claims."

In February, 1914, J. W. Hughes, the plaintiff's husband, a lineman in the employ of defendant, was killed in an accident on the Atlantic Coast Line Railroad. The plaintiff was his beneficiary under the plan, and it is conceded that defendant is liable to her, if liable at all, in the sum of $2,160 and interest, for which she had judgment in the court below. The only defense set up was her refusal to release the Atlantic Coast. Line. It appears that there was a contract between defendant and the railroad company, under which the former agreed to indemnify the latter "against all loss or damage of any kind arising from any. injury to persons in the employ of the telegraph company, while being carried free or at half rates over said railroads un-

&⟶For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes.

der this agreement." Mrs. Hughes offered to release all claims against the benefit fund and the defendant, but declined to release the Atlantic Coast Line; her contention being that she could recover from defendant the amount to which she was entitled under the plan without surrendering any right of action she might have against the railroad company. The trial court upheld this contention, sustained her demurrer to the defense interposed, and she had judgment accordingly.

We are of opinion that the question presented was correctly decided and deem it sufficient to merely outline our reasons for affirming the judgment. In the first place, it does not appear that Hughes was ever aware of this contract that defendant had with the Coast Line, or was chargeable with knowledge of any agreement between the two companies which related to or affected the rights of employés under the provisions of the benefit plan. The language of the section above quoted calls for a release against the benefit fund and telegraph company only, and carries no suggestion that the release of a third party could in any case be required. The fact that defendant might be liable to a third party, in this case the Coast Line, under a contract of indemnity unknown to the insured, did not serve to make such liability a claim against the defendant "arising from or growing out of the death of the employé," within the meaning of that phrase as used in the plan, and the defendant therefore could not exact a release of the Coast Line as the condition of paying the amount to which the plaintiff was otherwise entitled. In other words, the release of the benefit fund and the defendant company, which the plaintiff concededly offered, was the only release that the plaintiff could be required to give. This is the more apparent when the entire plan is examined. The ninth section contains this provision:

"Should claim otherwise than hereunder be presented or suit brought against the company, or against any other corporation, which may be at the time associated therewith in administration of the Employés' Benefit Fund, in accordance with the terms set forth in section 10, for damages on account of injury or death of any employé, such employé or his beneficiaries shall not be entitled to any payment from the Employés' Benefit Fund on account of such injury or death, unless such claim shall be withdrawn or such suit shall be discontinued before trial thereof or decision rendered therein."

When we look to see what is meant by "any other corporation, which may be at the time associated therewith in administration of the Employés' Benefit Fund," it plainly appears that the phrase refers to the American Telephone & Telegraph Company and its associated and allied companies, and there is no sustainable basis for extending its application. Under a familiar maxim of the law, the express mention of certain corporations against which claims might be made or suit brought operates to exclude corporations which are not specified. Not only was Hughes without notice of the private contract between defendant and the Coast Line, but the provisions of the plan itself warranted the inference that there were no outstanding contracts affecting his rights as an employé except those therein mentioned.

[2] Moreover, this seems clearly a case for the application of the rule that the words of an insurance policy, being those of the insur-

ance company itself, should be taken most strongly against it, and that interpretation adopted which is most favorable to the insured, if such interpretation be not inconsistent with the language used. National Bank v. Insurance Co., 95 U. S. 673, 24 L. Ed. 563; Liverpool Ins. Co. v. Kearney, 180 U. S. 132, 21 Sup. Ct. 326, 45 L. Ed. 460; Royal Ins. Co. v. Martin, 192 U. S. 149, 24 Sup. Ct. 247, 48 L. Ed. 385.

The plan in question was prepared and put into effect by the defendant company, and upon the authority of these decisions it cannot justly complain of a strict construction against it of this agreement with its employés.

The conclusion we have reached renders it unnecessary to decide whether the defense sought to be interposed was barred by the provisions of section 2808 of the South Carolina Code.

Affirmed.