Edwin R. Lynde, J.
In November, 1955, the plaintiffs applied for hospital and medical insurance by submitting subscriptions *179 to the defendants, which were accepted by them. The application contemplated that the plaintiffs would receive from the defendants certain medical, hospital and surgical benefits and payments in the event of sickness requiring hospital, medical or surgical care. The consideration was an annual amount to be paid quarterly. Early in August of 1963, the plaintiff, Rose Herman, entered a hospital for treatment and care. Thereafter requests for payment of the bills incurred were submitted to the defendants. The defendants rejected the claim, stating that they had not received a premium due in May of 1963. The plaintiffs now seek a judgment declaring that there were contracts with the defendants which were in full force and effect as of the date of the complaint herein and a decree to the effect that the defendants make payments for the surgical, medical and hospital bills incurred by the plaintiffs during and after August of 1963.
The plaintiff, Lewis Herman, testified that he had obtained the insurance as a member of a subscribing group in November, 1955, when he was associated with or employed by a corporation. In March, 1957, his association with the corporation ended. He notified the defendants and was transferred to a direct payment basis effective May 28,1957.
He stated that he understood that the insurance was a yearly contract for which he paid in installments and that he attached no particular significance to the periodic payments. While he was employed, payments were made semiannually. After he went on a direct payment basis, they were made more often.
The only writings he ever saw or received were two identification cards which were given to him in 1955. One was designated as a hospital service plan identification card. It had a blue cross imprinted and referred to a “ certificate ’ ’ as attached to the card. The other was designated as a surgical-medical plan identification card. It had a blue shield imprinted and instructed the holder to read his “ certificate.” The witness never received any form of certificate, nor had he ever seen or received any notice of termination. He sent a payment on May 22, 1963. Thereafter there was the hospitalization of his wife, the claim submitted to the defendants and the rejection. Then came the commencement of this action. While it was pending and prior to trial, the plaintiff, Rose Herman, was again hospitalized. In the course of this litigation, the plaintiffs have requested compensation for the additional expenses and have tendered all premiums due to date.
The defendants’ evidence consisted solely of a superficial description of office practices and an interpretation of company records. According to the defendants ’ witness, it is customary *180 to send to subscribers copies of the certificates or policies, to send reminder notices prior to the dates when premiums are due, and, if premiums are not received, to send further notices to the effect that the required payment may be made prior to expiration of the grace period. The defendants produced a document identified by their witness as a record indicating that the policies in question had been terminated as of May 28, 1963. The substance of the witness ’ testimony was that if the payment had been received, the termination entry consisting of a code number Avould not have been made on the record and that in such a case, a termination notice is invariably sent to the subscriber. The witness himself had no personal knoAvledge of the making of the entry or the mailing of the notice. His conclusion was an inference based on another inference.
From 1955 through 1963, the plaintiffs sent in their premiums by mail. There can be no question here that use of the post was sanctioned by both parties. However, the proof submitted by each of utilization of the mail in specific relevant circumstances is insufficient.
The testimony of the plaintiff, Lewis Herman, that he never received the certificates or policies was not met by the statement of the defendants ’ witness that it was customary to send certificates to subscribers. 'The recital by the plaintiff, Lbavís Herman, that he “sent” the premium, Avithout any proof that it was mailed in an envelope properly addressed and stamped, is insufficient to establish any presumption that the premium was received by the defendants. Similarly, the conclusion offered by the defendants ’ witness that a notice of termination was sent to the plaintiffs simply because a code number appeared on an office record is not testimonially corroborated by a statement that it is office practice to send such a notice (Richardson, Evidence 9th ed., § 79).
Since the plaintiffs did not receive the policies, they cannot be charged with notice of the provisions therein which automatically terminated the contract at the expiration of the grace period upon a default in payment of charges. Accordingly, the failure to pay premiums did not work a forefeiture of the policy (Perry v. Bankers ’ Life Ins. Co., 47 App. Div. 567, affd. 167 N. Y. 607). Furthermore, in the circumstances, the plaintiffs were in the same position as one to Avhom a binder has been issued and from whom payments of premiums have been accepted. The policies were in effect and remained in effect, and Avritten notice Avas required to bring about cancellation (Sherri v. National Sur. Co. of N. Y., 243 N. Y. 266). Since the defend *181 ants failed to prove that notice of termination was sent to the plaintiffs, it must be assumed that notice was not given (Salzman v. Prudential Ins. Co. of America, 296 N. Y. 273).
It follows that the plaintiffs are entitled to receive reimbursement with respect to the medical, surgical and hospital expenses incurred by them in August of 1963 in accordance with the benefit provisions then in effect under the hospitalization service and the surgical-medical plans. Further, since the plaintiffs are entitled to renew their contracts under section 253 of the Insurance Law and the defendants have failed to establish any statutory basis for a refusal to renew, the plaintiffs are entitled to receive reimbursement for medical, surgical and hospital expenses incurred in July and August, 1964, in accordance with the provisions of the plans then in effect.
The defendants may deduct from any payments the amount of subscription charges due to date.