Jack Rosenberg, J.
The expansion of our retail economy in large measure rests on expansive consumer credit sales — and this case presents an interesting facet of such practice. Plaintiff, which is in practical effect a “ factor ” for its retail store participants, brought this action to recover $2,342.08 on a claimed written agreement, incident to “card holder” retail purchases.
On July 20, 1964 defendant signed and sent to plaintiff the plaintiff’s printed form of application for a credit card. The “ blank ” in such form of application, intended to be completed by defendant — treating with the requested credit limitation — was not completed by defendant; but plaintiff on its own fixed $250 as the maximum amount of credit.
The credit application as here material, provides: 1 ‘ This agreement has been entered into in New York and shall be governed by the laws of New York. This agreement not valid *824 until accepted by Uni-Serv in New York by mailing applicant a Uni-card * * *
‘ ‘ If Uni-card is stolen or lost, Card holder will notify Uni-Serv in writing, and until Uni-Serv receives such notification Card holder will continue to be responsible for any use of card. ”
Apparently on July 31,1964 plaintiff approved the defendant’s application, and as stated fixed a $250 maximum credit allowance.
The plaintiff’s operating plan is rather unique. Plaintiff has as its participants owners of retail stores exhibiting its distinctive indicia of participation. A plaintiff card holder was privileged with the use of the card, to make purchases at participant retail stores. Plaintiff paid to its participants the amounts of such purchasers. The card holder had the option to reimburse plaintiff for the amounts so advanced either (a) in lump sum within 24 days without interest or (b) in 10 equal successive monthly installments, with monthly interest on unpaid balances of l1/2% up to $500 and 1% on the excess, if any.
Plaintiff claims that it accepted the defendant’s application, by" mailing a “Uni-Card” to him. The defendant denies receiving the card.
Concededly defendant never used a Uni-card and never made any purchases therewith. Indeed the card was not used either in August or September of 1964. However, from October 9,1964 through October 28, 1964, the card was used by an unknown person, without defendant’s knowledge or consent on 98 separate occasions, with an aggregate $2,342.08 purchase price.
Plaintiff paid the $2,342.08 to its participants retail store owners; and now seeks reimbursement from defendant under the claimed “ Retail Instalment Credit Agreement ”, which is part of the credit application signed by defendant and mailed to plaintiff by defendant.
At the outset it is requisite to determine whether there was a contract between plaintiff and defendant. It was open to plaintiff and defendant to stipulate the means by which there was to be acceptance of the contemplated contract. (Bellmore Dress Co. v. Tanbro Fabric Corp. 115 N. Y. S. 2d 11.) Since it was stipulated that mailing of the Uni-card was to constitute acceptance of the contemplated contract, it becomes requisite to determine whether plaintiff mailed the Uni-card. Obviously, the stipulated means for acceptance assumed proper mailing of the card, that is, mailing in a prepaid, sealed and properly addressed envelope. Therefore nothing less will suffice.
The plaintiff’s only proof as to mailing of the Uni-card comes from the testimony of its collection manager, who has no personal knowledge of the claimed mailing. Reliance is placed *825 entirely on an entry made by plaintiff, in its usual course of business, on the credit application showing that on July 31,1964 the credit application was approved buttressed by the testimony of the collection manager to the effect that there exists a custom to mail the card within one or two days after approval of the application. There was no proof that the Uni-card followed an ordinary and established course of business to the custody of the post office, as was the situation in Gardam & Son v. Batterson (198 N. Y. 175).
The defendant asserts that other than receiving two letters, which do not bear on this issue, he received no communication before October 20, 1964 from plaintiff.
There is a presumption that an envelope properly addressed, stamped and mailed was received. (Trust & Guar. Co. v. Barnhardt, 270 N. Y. 350; Boyce v. National Commercial Bank, 41 Misc 2d 1071, affd. 22 A D 2d 848.) There is also a presumption that an envelope, properly addressed, stamped and mailed, was delivered to the addressee the following day. (Dulberg v. Equitable Life Assur. Soc., 252 App. Div. 209, revd. on other grounds 277 N. Y. 17.)
But there is no presumption of mailing. Indeed where there is denial of receipt of the letter, plaintiff is required to establish facts how letter was mailed, to receive the benefit of the presumption that a letter mailed is received. (Cashman, Inc. v. Spellman, 233 App. Div. 45.) And, there is no presumption at all, absent proof of mailing in an envelope properly addressed and stamped. (Herman v. Associated Hosp. Serv., 45 Misc 2d 178.)
Defendant could not possibly have personal knowledge of the claimed mailing, particularly in view of his denial of receipt of the card. The facts as to the claimed mailing are peculiarly within the plaintiff’s knowledge, and the proof as to whether plaintiff mailed the card, even if assumed (contrary to fact) undenied, would present a fact issue for my determination. (Hull v. Littauer, 162 N. Y. 569; Woodson v. New York City Housing Auth., 10 N Y 2d 30; Sadowski v. Long Is. R. R. Co., 292 N. Y. 448; Smith v. Smith, 273 N. Y. 380; Williams v. Delaware, Lackawanna & Western R. R. Co., 155 N. Y. 158; Holly v. Verrastro, 280 App. Div. 1024; Mocarski v. Transit-Mix Concrete Co., 267 App. Div. 832; Bell v. Hyde, 262 App. Div. 408; Matter of Sebring, 238 App. Div. 281; Anonymous v. Anonymous, 22 N. Y. S. 2d 432; Bux v. Robinson, 199 N. Y. S. 2d 619; Becker v. Hart, 135 App. Div. 785.)
I find that plaintiff did not mail the card to defendant; that there was no acceptance of the application; and that there was and is not any contract between plaintiff and defendant.
*826 If it were necessary to determine, upon assumption (contrary to fact) that there was such contract, whether there was an obligation to reimburse plaintiff for its claimed loss, I would hold there was no such obligation. The plaintiff’s claimed loss is directly attributable to conduct of either or both of the plaintiff and its participant retail store owners.
Neither the credit card nor a specimen thereof was offered in evidence. However the proof shows that there was a “ blank ” on the card for the card holder’s signature. If the card when presented to the retail store owner was unsigned, then such store owner ought not to have made the sale. The plaintiff’s claimed loss in such event, would be due directly to the conduct of the retail store owner, its agent. If the card when presented to the retail store was signed — such signature was not the defendant’s signature, as the card had not been received by him. As the card apparently was in circulation, there is a permissible inference that plaintiff misdirected the envelope in which the card is claimed to have been mailed. The plaintiff’s claimed loss in such event, would be due directly to its own conduct. In either event there could be no recovery against defendant.
Plaintiff fixed a $250 credit limit for defendant. Plaintiff claims it mailed the credit card to defendant on July 31, 1964 or within a day or two thereafter. Concededly the card was not used in August and September of 1964. Beginning with October 9, 1964 and through October 20, 1964, there was an avalanche of purchases by use of the credit card. There were 98 such purchases aggregating $2,342.08. This should have aroused the plaintiff’s suspicions much earlier than seems to have been the case, and mere inquiry of plaintiff would have revealed the illegitimate use of the credit card. In such circumstances, it was the plaintiff’s conduct which is the proximate cause of the loss.
Moreover, it is my opinion that plaintiff having limited the defendant’s credit to $250, the indemnity provision of the claimed agreement must be construed as likewise limited. Plaintiff, had it desired to foist upon defendant an obligation for an unlimited amount — in the event of loss of the card — should have stated this obligation in clear language. (Sincoff v. Liberty Mut. Fire Ins. Co., 11 N Y 2d 386; Vito v. General Mut. Ins. Co., 15 A D 2d 289; Oswego Soy Prods. Corp. v. Home Ins. Co., 94 N. Y. S. 2d 301, affd. 276 App. Div. 820.)
The rules for construction of ordinary contracts do not differ from those to be applied to insurance contracts. (Jacobwitz v. Mutual Benefit Health & Acc. Assn., 10 A D 2d 159.) The seemingly different rules spring from the fact that the ordinary contract is negotiated and thus in a sense prepared by both *827 contracting parties; whereas the insurance contract is not negotiated and always prepared by the company. In this case, the contract was not negotiated and exclusively prepared by plaintiff, so that rules for construction of insurance contracts are applicable. (Western Union Tel. Co. v. Hughes, 228 F. 885.)
The claimed contract should be construed so that any ambiguity is resolved against plaintiff. (Taylor v. United States Cas. Co., 269 N. Y. 360; Paskusz v. Philadelphia Cas. Co., 213 N. Y. 22.) The contract should be construed so as to bring about a just result and avoid inequity. (Campbell v. State of New York, 240 App. Div. 304.)
While it is true that improvident agreements may be made, without affecting the validity of such contract — In determining what the construction of the agreement should be this is a factor. (Brown v. McGraw-Hill Book Co., 25 A D 2d 317.) It is appropriate to quote from the opinion in that case. “It is not to be assumed that people act unreasonably to their own disadvantage, and an interpretation which assumes that they so acted is not favored. * * * ‘ Contractual obligations are fixed solely by the parties, and the language of a business contract must be construed in the light of what a business man would reasonably expect to give or receive, to perform or suffer, under its terms ’ (Shirai v. Blum, 239 N. Y. 172, 179). 1 In the transactions of business life, sanity of end and aim is at least a presumption, albeit subject to be rebutted ’ (Outlet Embroidery Co. v. Derwent Mills, 254 N. Y. 179, 183) ” (p. 320).
Any contention that the indemnity provision of the claimed contract obliged defendant in an unlimited amount — despite the $250 credit limitation which plaintiff imposed — “ is not sanity of end or aim ”. (Brown v. McGraw-Hill Book Co., supra.)
■ All issues of fact are resolved in favor of defendant. Judgment for defendant dismissing the complaint.