CAYUGA CONSTRUCTION CORPORA-
TION et al., Plaintiffs,

v.

VANCO ENGINEERING COMPANY, a
corporation, Defendant.

Civ. A. No. 75–1278.

United States District Court,
W. D. Pennsylvania.

Nov. 10, 1976.

Stephen J. Laidhold, Pittsburgh, Pa., for
plaintiffs.

James McGregor, Beaver, Pa., for defend-
ant.

OPINION

SNYDER, District Judge.

I. BACKGROUND

After non-jury trial in this breach of con-
tract action, judgment will be entered for
the Defendant, Vanco Engineering Compa-
ny [Vanco]. Vanco mailed identical propos-
als to eight construction firms, including

the Plaintiff, who were possible bidders on a highway project to be built in the City of Baltimore and therefore might require bridge deck forms. Their proposal (set forth in full as Addendum I), dated April 19, 1974, quoted a price for material of $246,000.00, plus an alternate additional sum of $9,200.00 for supplemental material, such materials to be "as per Maryland Department of Transportation, State Highway Administration requirements" and to be furnished and delivered "F.O.B. Fabricator's Shop with truck freight allowed to nearest accessible point to job site." The price did not include a 4% Maryland State sales tax. The alternate bid attached to the proposal also included the phrase "THE ABOVE PRICES ARE FIRM FOR SHIPMENT OF MATERIAL PRIOR TO JUNE 30, 1975. ANY MATERIAL SHIPPED TO THE JOB SITE AFTER JUNE 30, 1975, IS SUBJECT TO ESCALATION." Also, "THIS PROPOSAL IS SUBJECT TO WRITTEN ACCEPTANCE BY THE BUYER WITHIN THIRTY (30) DAYS FROM THE DATE OF SAME PROPOSAL."

The Plaintiff, a joint venture of Cayuga Construction Corporation, Caycon Construction Co., Inc., and Atlas Machine & Iron Works, Inc. [hereinafter Cayuga], used this Vanco proposal in their successful bid on the Baltimore highway project.

Vanco was a material supplier of steel and related metal products for the building industry and had close ties with Granco Steel Products Company (Granco), which was a unit of National Steel Corporation with offices in Houston, Texas, and fabricating facilities in Delanco, New Jersey, near Philadelphia. Vanco's proposal was based on a bid from Granco, subject to Vanco's acceptance within 30 days from April 19th, so that in this instance Vanco would have purchased the forms from Granco and resold them to Cayuga.

On April 29, 1974, the President of Caycon called Granco's District Office in New York, and David L. Mekeel III, General Sales Manager of Vanco, returned the call to answer an inquiry as to what the escalation figure would be on the Vanco proposal

for delivery after June 30, 1975. It is noted that this telephone call was made five days after the City of Baltimore bid closing date of April 24, 1974. Mekeel gave a quotation of "5% per quarter or every 3 months after June 30, 1975 delivery". On May 9, 1974, Mr. Patchett of Cayuga inquired of Mekeel if the 30 day acceptance time was firm and Mekeel told him that it was. Patchett also inquired about some technical matters as to whether the bid included shop drawings and where the materials were to be fabricated. Patchett further inquired if Vanco could store the materials at their shop to avoid paying the escalation and Mekeel advised that they could not. On May 10th, Donald Unbekant, General Manager of Cayuga, called and repeated some of the same questions and asked Mekeel for the names of erectors. On May 15, 1974, Unbekant telephone Mekeel "that he had decided to accept" the Vanco proposal and that a letter of intent would be coming. Mekeel insisted it must be received by May 19th. Vanco then telegraphed acceptance of the Granco proposal on May 15th but shortly thereafter, on the same date, was notified by Granco that it could not deliver the steel at the proposed price. Vanco did nothing to notify Cayuga of Granco's notice at that time.

Four days later, on May 21st, Mekeel called Cayuga and informed them that he couldn't do the job for the price quoted. On May 24, 1974, Unbekant, for Cayuga, again wrote Vanco of the acceptance of the original offer (Addendum II), acknowledged receipt of the telephone call of May 21st that Vanco would not honor the original bid and notified Vanco that they would be held responsible for any loss, cost, expense or damage flowing from their failure to honor the contract. About three or four weeks later, another telephone conversation was had between Unbekant and Mekeel at which time Mekeel asked for an additional 15% increase in price, and additionally any escalation in price in effect at the time of shipment.

Instead, Cayuga subsequently went to Buffalo Bridge Service and secured a contract for material and erection in the

amount of $434,400.00, as opposed to Vanco's proposal of $255,200.00 for material alone, and sought damages here of $21,819.45 as the increased cost to them over the materials bid of Vanco.

It is the Defendant's position that the Plaintiffs failed to accept their bid within the time specified, that Plaintiffs' purported acceptance was conditional and thus ineffective, and that the Plaintiffs have failed to prove their damages.

## II. THE PROPOSAL AND ACCEPTANCE

The Plaintiff contends that it sent to the Defendant a written acceptance, mailed May 17, 1974, in full compliance with the requirements of the proposal.

 Under the general rule that the place of contract is the place where the last act necessary to the completion of the contract was done, the New York Plaintiff's letter accepting the foreign Defendant's offer, which is effective upon its dispatch in New York, makes New York the place of contract. *Product Promotions, Inc. v. Cousteau*, 495 F.2d 483 (5th Cir. 1974); *Berkshire Engineering Corp. v. Scott-Paine*, 29 Misc.2d 1010, 217 N.Y.S.2d 919 (1961); § 97 Williston on Contracts, 3d ed. Vol. 1, p. 358. Thus, in the instant case as counsel agreed, we will determine the effect of the written acceptance under New York law.

 The offer required written acceptance by the buyer within 30 days. Where an offer does not specify the manner in which the offeree must communicate its acceptance, mailing of the notice of acceptance completes the contract. *United States v. Sabin Metal Corporation*, 151 F.Supp. 683 (1957), aff'd 253 F.2d 956 (2d Cir. 1958). *Cf. Krawez v. Stans*, 306 F.Supp. 1230 (E.D.N.Y.1969).

The evidence is clear that an acceptance was in fact mailed to, and received by Vanco. Vanco produced the envelope attached to the May 17th letter, which is postmarked

May 21, 1974, two days after the offer had expired.[1] But Unbekant testified (Tr. pp. 75, 79–80):

"A Well, this [the letter of May 17th] is the writtin [sic] acceptance of his offer.

Q And what date was it sent from your offices?

A May 17.

Q And to who [sic] was it directed?

A Mr. David Mekeel of Vanco Engineering Company."

\* \* \* \* \* \*

"Q . . . Now, we are up to the point where you had spoken with Mr. Mekeel on May 15 and told him you were accepting it, but he told you he needed a written acceptance, is that correct?

A Yes, sir.

Q And thereafter you sent Plaintiffs' Exhibit 9 to Mr. Mekeel, which you mailed from your office, you said, on May 17, is that correct?

A Yes, sir."

No further testimony was offered on the mailing.

In the case of *William Gardam & Son v. Batterson*, 198 N.Y. 175, 91 N.E. 371 (1910), the New York Court stated the rule as follows:

"There was no proof of an actual deposit of the originals in the post office, and there was no sufficient proof of a course of office practice or of business, from which a presumption might be legally indulged, that the letters had been carried to the post office and that they, therefore, had been received in due course of the mails . . ."

\* \* \* \* \* \*

". . . where the question is whether a letter was sent by mail at a certain time, in the absence of any evidence as to its being deposited with the post office authorities, . . . the proof shall es-

---

1. We are not required in this case to determine whether the telephone call from Unbekant to Mekeel on May 15th was an acceptance, for admittedly Mekeel told Unbekant that he would have to have a written acceptance by May 19th as required by the original bid. (Tr. p. 74).

tablish the existence of a course of business or of office practice, according to which it naturally would have been done."

And in *Uni-Serv Corp. v. Frede*, 50 Misc.2d 823, 271 N.Y.S.2d 478 (1966), the Court stated:

"[The d]efendant could not possibly have knowledge of the claimed mailing . . . . The facts as to the claimed mailing are peculiarly within the plaintiff's knowledge, and the proof as to whether plaintiff mailed the card—even if assumed [contrary to fact] undenied—would present a fact issue for [the Court's] determination."

■ In this case, it cannot be argued that the evidence established was sufficient for the Plaintiff to obtain the benefit of the mailing rule to show acceptance within the time required. Since the burden on this issue fell to the Plaintiff and this Court finds against him on that point as far as the letter of May 17th is concerned, there was no timely acceptance.

## III. THE PROMISSORY ESTOPPEL CONTENTION

Plaintiffs in this case strongly argue that even if they did not prove timely acceptance under traditional contract principles, the doctrine of promissory estoppel entitles them to recover their damages. In substance they argue that Mekeel admitted that the Vanco proposal was submitted to the Plaintiffs and other general contractors for the purpose of bidding on the project. He stated he intended the Plaintiffs to rely on the proposal (Tr. p. 192) and he was aware long before May 19, 1974 that the Plaintiffs had been awarded the contract for the project and that they they would be completing the same (Tr. p. 159). Mekeel further testified that as of May 15, 1974, it was understood in various conversations between the Defendant and the Plaintiffs that the Defendant was to supply the requested contract for materials, and based

thereon, the Defendant immediately took steps to obtain the necessary material by accepting the Granco bid. The Plaintiffs admit that promissory estoppel is an equitable doctrine which may be used by the courts in those instances where the terms of the agreement are not specific, or no time is specified, or the offeror attempts to withdraw the offer prior to formal acceptance.

■ In Section 89(B)(2) of Contracts Restatement of the American Law Institute (Tentative Draft No. 2, 1965) it is provided:

"An offer which the offeror should reasonably expect to induce action or forbearance of a substantial character on the part of the offeree before acceptance and which does induce such action or forbearance is binding as an option contract to the extent necessary to avoid injustice."

Here, however, the doctrine does not apply. The bid proposal called for written acceptance on or before May 19, 1974, and the Defendant could not have reasonably expected that this offer would induce any action by Plaintiffs in reliance on the offer being held open beyond that date. The Plaintiffs failed to prove a timely acceptance; so the offer merely expired. The doctrine of promissory estoppel was never intended to overcome the fundamental contract principle that there must be an offer and acceptance before a contract can be created, and it avails the Plaintiffs no remedy here.

## IV. THE CONDITIONAL ACCEPTANCE

The Defendant strongly urges that even if the Court had found acceptance to have been mailed within the proper time or applied the doctrine of promissory estoppel, that there was never an unqualified acceptance of its proposal. Defendant points to Anderson's Treatise[2] addressing Section 2–201 of the Uniform Commercial Code adopted by both Pennsylvania and New York which provides:

---

2. Vol. 1, Anderson, R., Uniform Commercial Code, p. 265, § 2–201:22(d), Second Edition, 1970.

"If the writing indicates that such contract as there may be is subject to a condition precedent but does not indicate whether such condition has been satisfied, the writing is not sufficient. Thus a writing which indicates that any transaction between the parties does not constitute a contract until the contingencies have been satisfied, whether in terms of acts of a party thereto or of third persons, the writing is not sufficient."

As noted previously, the Cayuga acceptance included the language "subject to award, notice to proceed and your approval as supplier by the Baltimore City . . . we will accept your offer . . .."

However, under the testimony in the instant case the original bid proposal sent out by Vanco was in connection with the Baltimore City Project and Vanco well knew that its bid was subject to approval by Baltimore City insofar as being a supplier was concerned. It cannot then be said that the acceptance was subject to conditions not contemplated by the bidder.

Thus, though not necessary to this Opinion because of our previous finding that acceptance was not finally made, we want to make it clear that we do not find that the acceptance was conditional or was not a full compliance with the offer in other respects.

## V. THE PLAINTIFFS FAILED TO PROVE THE DAMAGES

The Defendant had also strongly urged that because of the actions of the Plaintiffs in securing a supplier of the metal who also did the erecting as compared to the Defendant's contract to only supply the metal, and because of further failure to prove the difference in the substituted contract with Buffalo Bridge Services, that the Plaintiffs had also failed to provide any basis for the damages that they were claiming.

It is noted that the Plaintiffs only contacted one other supplier to replace the Vanco material before entering into a subcontract agreement with Buffalo Bridge Services even though they were informed on May 21st that Vanco would not supply the material and the actual start up date was to be between June 21st and July 8th. But it is true that Unbekant arrived at his final figure of damages through the process of calculation. His figure provided a reasonable basis for damages and would have formed a basis for a verdict for the Plaintiffs based upon a sufficient degree of proof had there been a contract acceptance to start with.

Because there was no timely acceptance of the contract in the instant situation, judgment must be entered for the Defendant.

## VI. DEFENDANT'S MOTION TO DISMISS

The above Opinion will also constitute the reasons of the Court for the denial of the Defendant's Motion to Dismiss (on grounds that the Plaintiffs failed to prove a cause of action under the law and the evidence of the case, and that the Plaintiffs' proof failed to show a timely acceptance of the Defendant's offer to enter into a contract for the purchase of the material) and judgment will be entered for the Defendant.

The foregoing shall constitute the Court's Findings of Fact and Conclusions of Law as required by Rule 52, Federal Rules of Civil Procedure, and an appropriate Order will be entered.

ADDENDUM I to follow.

## ADDENDUM I

# VANCO ENGINEERING COMPANY
### 524 TRIANGLE BLDG.
### PITTSBURGH, PA. 15222
412/391-1695

GSPANS
ECK
L STEEL
FLOOR SYSTEMS
MATION ROLLING DOORS
COMPONENT SYSTEMS BLDGS.
HOPES WINDOWS AND WALLS

STAINLESS FASCIAS
LAMINATED WOOD PRODUCTS
S.I.P. BRIDGE FORMS
CORRUFORM · COFAR
METAL WALL SYSTEMS
PRECAST WALL SYSTEMS
CEMENT FIBER DECK

VANCO

PROPOSAL

April 19, 1974
Our Estimate No. P4040G

TO: ALL BIDDERS

SUBJECT: Permanent Metal Bridge Deck Forms
City of Baltimore
Interstate Division of Bureau of
 Highways
Contract No. BC243-8-815
 FAP#I-83-1(32)0
Jones Falls Expressway
Baltimore, Maryland
Letting Date: April 24, 1974

We propose to furnish and deliver F.O.B. Fabricator's Shop with truck freight allowed to nearest accessible point to job site, you to unload, the following material:

Necessary Permanent Metal Bridge Deck Forms and accessories, including screws, for the following bridge structure on subject project. Bridge form sheets to be 14, 15, 16, 18, 19, 20 gage, 2" X 6-1/2" Pattern and 14, 16, 18, 19, 20 gage, 2" X 7-1/2" Pattern (pitch of sheet matches spacing of bottom main reinforcing):

 Jones Falls Expressway - Baltimore to Preston Street
 South of Centre Street to Eager Street

Approximate gross area: 247,801 Square Feet
Approximate net area: 203,000 Square Feet

Material as per Maryland Department of Transportation, State Highway Administration requirements.

Exclusions: Our standard plus material required to form the concrete end diaphragms at the abutments and hinges.

Qualification: Minimum 40,000 pound truck load shipments.

BASE PRICE: FIRM FOR SHIPMENT OF MATERIAL PRIOR TO JUNE 30, 1975:

 TWO HUNDRED FORTY-SIX THOUSAND DOLLARS - - - - - - - -$246,000.00
 (does not include 4% Maryland State Sales Tax)

**1188**

# VANCO ENGINEERING COMPANY
## 524 TRIANGLE BLDG
## PITTSBURGH, PA. 15222
### 412/391-1895

STEEL JOISTS · LONGSPANS
STEEL ROOF DECK
STRUCTURAL STEEL
MAHON FLOOR SYSTEMS
MAHON ROLLING DOORS
COMPONENT SYSTEMS BLDGS
HOPES WINDOWS AND WALLS

STAINLESS FASCIAS
LAMINATED WOOD PRODUCTS
SIP BRIDGE FORMS
CORRUFORM · COFAR
METAL WALL SYSTEMS
PRECAST WALL SYSTEMS
CEMENT FIBER DECK

## PROPOSAL

April 19, 1974
Our Estimate No. P4040G

TO: ALL BIDDERS

ALTERNATE PRICE: For furnishing necessary 12 gage sheet metal required to form the concrete end diaphragms at the abutments and hinges, add to the base price:

FIRM FOR SHIPMENT OF MATERIAL PRIOR TO JUNE 30, <u>1975</u>:

NINE THOUSAND TWO HUNDRED DOLLARS - - - - - - - -$ 9,200.00
 (does not include 4% Maryland State Sales Tax)

NOTE : <u>TEMPORARY SUPPORTS MAY BE REQUIRED TO SUPPORT THE ABOVE MATERIAL DURING PLACING OF THE CONCRETE - TO BE FURNISHED BY OTHERS, IF REQUIRED.</u>

THE ABOVE PRICES ARE FIRM FOR SHIPMENT OF MATERIAL PRIOR TO JUNE 30, 1975. ANY MATERIAL SHIPPED TO THE JOB SITE AFTER JUNE 30, 1975 IS SUBJECT TO ESCALATION.

THIS PROPOSAL IS SUBJECT TO WRITTEN ACCEPTANCE BY THE BUYER WITHIN THIRTY (30) DAYS FROM THE DATE OF SAME PROPOSAL.

Very truly yours,

VANCO ENGINEERING COMPANY

/s/ David L. Mekeel, III

David L. Mekeel, III
Sales Manager

DLM:ss
cc: Vanco, Beaver

B

ADDENDUM II

ONSTRUCTION CORPORATION

L CONTRACTORS AND ENGINEERS

OFFICE - 100 CHURCH STREET - NEW YORK, N. Y. 10007

DIGBY 9-0560

May 24, 1974

Vanco Engineering Company
524 Triangle Bldg.
Pittsburgh, Pa. 15222

Att: **Mr. G. Myers, President**

RE: Your Estimate No. P4040G
Permanent Metal Bridge Deck Forms
City of Baltimore
Interstate Division of Bureau of Highways

Contract No. BC 243-8-815 - FAP #1-83-1(32)0
Jones Falls Expressway
Baltimore, Maryland

Gentlemen:

On April 24, 1974, we received your unsolicited offer to
furnish and deliver certain materials for the Federally aided
Interstate Project being built by the City of Baltimore as set
forth in your proposal dated April 19, 1974, a copy of which is
annexed hereto. We submitted our bid on this project relying
upon the price offered by you. We were the lowest responsible
bidder and have been awarded the contract.

On May 9, 1974, our representative, Mr. Roger Patchett, spoke
to your Mr. Mekeel concerning the latest date for acceptance
of this offer and was advised that the offer was firm until
May 19, 1974.

On May 15, 1974, I personally spoke to Mr. Mekeel and advised him
that we accepted this offer and that we would confirm this accep-
tance by letter. On May 17, 1974, I wrote to Mr. Mekeel accepting
your offer (see copy enclosed).

Vanco Engineering Company

On May 21, 1974, we received a telephone call from Mr. Mekeel
in which he stated you would not honor the contract price con-
tained in the agreement between us because your supplier would
not honor his commitment to you unless you agree to pay him
more.

Your failure to honor our agreement is unconscionable and contrary
to the fair practices in our industry.

Please be advised that we have sought out other suppliers of the material and we are being forced to pay sums substantially higher than your quoted price for the same materials as a result of your breach of our agreement. Unless you agree to pay us for all of the loss, cost, expense and damages flowing from your breach, we will be forced to commence an action against you to recover them.

Very truly yours,

CAYUGA - CAYCON - ATLAS

D. E. Unbekant

DEU/dr
Enc.
REGISTERED MAIL